**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY, LEXINGTON**

| | |
|---|---|
| In re ClassicStar Mare Lease Litigation ) | MDL No. 1877 |
| ) | All Track I and III Cases |
| James D. Lyon, Chapter 7 ) | |
| Trustee of ClassicStar LLC, ) | Master File: |
| ) | Civil Action No. 5:07-cv-353-JMH |
| Plaintiff, ) | |
| ) | and |
| v. ) | |
| ) | Civil Action No. 5:06-cv-243-JMH |
| Tony P. Ferguson, et al., ) | Civil Action No. 5:07-cv-419-JMH |
| ) | Civil Action No. 5:09-cv-215-JMH |
| Defendants. ) | |
| ) | Jury Trial |

<u>TRUSTEE'S PROPOSED JURY INSTRUCTIONS</u>

Plaintiff, James D. Lyon, Chapter 7 Trustee (the "Trustee") of the Debtor, ClassicStar,

LLC (the "Debtor" or "ClassicStar"), submits his proposed jury instructions.

## Table of Contents

Page

1.   INTRODUCTION ...................................................................................................1
2.   JURORS' DUTIES .................................................................................................1
3.   EVIDENCE DEFINED ..........................................................................................2
4.   EVIDENCE - DIRECT OR CIRCUMSTANTIAL ..............................................3
5.   CONSIDERATION OF EVIDENCE .....................................................................3
6.   STATEMENTS OF COUNSEL .............................................................................4
7.   CREDIBILITY OF WITNESSES - WEIGHING CONFLICTING TESTIMONY ...........4
8.   BIAS .......................................................................................................................5
9.   PRIOR SWORN STATEMENTS ..........................................................................6
10.  DEPOSITIONS - USE AS EVIDENCE ................................................................6
11.  INTERROGATORIES - USE AT TRIAL ............................................................7
12.  REQUESTS FOR ADMISSIONS – USE AT TRIAL ..........................................7
13.  PRIOR INCONSISTENT STATEMENT BY A WITNESS .................................7
14.  EXPERT TESTIMONY .........................................................................................8
15.  EXPERT OPINION MUST BE TO A REASONABLE PROBABILITY .............8
16.  OBJECTIONS BY COUNSEL- RULINGS ON EVIDENCE ..............................9
17.  INSTRUCTIONS TO BE CONSIDERED AS A WHOLE ..................................9
18.  COURT IMPARTIALITY ....................................................................................10
19.  JURY'S DELIBERATIONS .................................................................................10
20.  THE TRUSTEE'S CONTENTIONS ....................................................................12
21.  DEFENDANTS' CONTENTIONS ......................................................................15
22.  BURDEN OF PROOF - BY A PREPONDERANCE OF THE EVIDENCE .................15
23.  ADVERSE INFERENCES ...................................................................................16
24.  THE LAW .............................................................................................................17
25.  CAPACITY AND ROLE OF THE TRUSTEE ...................................................17
26.  BREACH FIDUCIARY DUTY – DUTIES OF CARE AND LOYALTY, SELF-
     DEALING .............................................................................................................18
     A.    General Instruction on Fiduciary Duties ..................................................18
     B.    Liability of a Fiduciary for Breach of Duties of Care and Loyalty ......................20
     C.    Liability of A Fiduciary for Self-Dealing ................................................23
27.  BREACH OF FIDUCIARY DUTY – INSOLVENCY ........................................25
28.  AIDING AND ABETTING BREACH OF FIDUCIARY DUTY ........................27
29.  INTENTIONAL FRAUDULENT TRANSFER - KRS § 378.010 ......................28
30.  INTENTIONAL FRAUDULENT TRANSFERS - 11 U.S.C. § 548 ..................31
31.  BADGES OF FRAUD – SHIFT OF THE BURDEN OF PRESENTING EVIDENCE ...34
32.  KNOWLEDGE OF INSOLVENCY BY THE DEFENDANTS ..........................34
33.  INVOLVEMENT OF COMPANY INSIDERS ...................................................35
34.  CONSTRUCTIVE FRAUDULENT TRANSFERS – KRS § 378.020 ...........................36
35.  CONSTRUCTIVE FRAUDULENT TRANSFERS - 11 U.S.C. § 548 ...........................38
36.  THE TRUSTEE MAY RECOVER FRAUDULENT TRANSFERS FROM (I) ANY
     DEFENDANT THAT WAS THE INITIAL PERSON OR ENTITY THAT RECEIVED
     THE TRANSER, OR (ii) FROM A DEFENDANT WHO SUBSEQUENTLY
     RECEIVED THE TRANSFER, OR (iii) FROM A DEFENDANT WHO BENEFITTED
     FROM THE TRANSFER BUT WHO DID NOT RECEIVE THE TRANSFER
     DIRECTLY ..........................................................................................................39

i

| | | |
|---|---|---|
| 37. | CONVERSION | 41 |
| 38. | UNJUST ENRICHMENT | 42 |
| 39. | UNLAWFUL DISTRIBUTIONS – KRS §§ 275.225 ET. SEQ. | 43 |
| 40. | UTAH CODE ANNOTATED §§ 76-10-1601 ET. SEQ. | 44 |
| 41. | BREACH OF CONTRACT - HORSES | 47 |
| 42. | BREACH OF CONTRACT – OIL AND GAS INTERESTS | 48 |
| 43. | CIVIL CONSPIRACY | 50 |
| 44. | ALTER EGO LIABILITY | 50 |
| 45. | DAMAGES | 53 |
| | A.    Damages For Breach of Fiduciary Duty, Fraudulent Transfers, Conversion, Unjust Enrichment, Unlawful Distributions, Violations of Utah Pattern of Unlawful Activities Statute | 53 |
| | B.    Damages for Breach of Contract | 54 |
| 46. | THE TRUSTEE MAY RECOVER ALL OF CLASSICSTAR'S DAMAGES FROM ALL OR ANY ONE OF THE DEFENDANTS | 55 |
| 47. | EQUITABLE SUBORDINATION AND DISALLOWANCE OF CLAIMS – 11 U.S.C. §§ 502, 510(c) | 55 |

130771.00601/21979701v.1

1.      INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must

follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case.  I

will then explain the Trustee's position, and then I will explain the Defendants' position.   Then I

will explain some rules that you must use in evaluating particular testimony and evidence.  And

last, I will explain the rules that you must follow during your deliberations in the jury room, and

the possible verdicts that you may return.

Please listen very carefully to everything I say.

Authority:  6th Cir. Pattern Jury Instructions, 1.01 Introduction.

2.      JURORS' DUTIES

You have two main duties as jurors.  The first one is to decide what the facts are from the

evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine,

and nothing that I have said or done during this trial was meant to influence your decision about

the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if the

Trustee has proven his case.  It is my job to instruct you about the law, and you are bound by the

oath that you took at the beginning of the trial to follow the instructions that I give you, even if

you personally disagree with them.  This includes the instructions that I gave you before and

during the trial, and these instructions.  All the instructions are important, and you should

consider them together as a whole.

The lawyers have talked about the law during their arguments.  But if what they said is

different from what I say, you must follow what I say.  What I say about the law controls.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

Authority: 6th Cir. Pattern Jury Instructions, 1.02 Jurors' Duties.

3.    EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. My comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions the lawyers asked. I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

Authority: 6th Cir. Pattern Jury Instructions, 1.04 Evidence Defined.

2

4.      EVIDENCE - DIRECT OR CIRCUMSTANTIAL

Generally speaking, there are two types of evidence from which a jury may properly find the facts.

1.      Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact.  If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

2.      Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

3.      It is your job to decide how much weight to give the direct and circumstantial evidence.  The law makes no distinction between the weight that you should give to either one, and the law does not say that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial and give it whatever weight you believe it deserves.

Authority:  6th Cir. Criminal Pattern Jury Instructions, 1.06 Direct and Circumstantial Evidence; 7th Cir. Civil Pattern Jury Instructions.

5.      CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

Authority:  6th Cir. Pattern Jury Instructions, 1.05 Consideration of Evidence.

3

6.      STATEMENTS OF COUNSEL

A further word about statements and arguments of counsel.  The lawyers' statements and arguments are not evidence.  Instead, their statements and arguments are intended to help you review the evidence presented.  If you remember the evidence differently from the attorneys, you should rely on your own recollection.

The role of attorneys is to zealously and effectively advance the claims of the parties they represent within the bounds of the law.  A lawyer may argue all reasonable conclusions from evidence in the record.  It is not proper, however, for an attorney to state an opinion as to the truth or falsity of any testimony or evidence.  What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief concerning testimony or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of the trial.

Authority:  *Wise v. Walker*, 2010 U.S. Dist. LEXIS 87067, at * 18 (N.D. Ca. August 2, 2010); *Trademark Research Corp. v. Maxwell Onlinc, Inc.*, 995 F.2d 326 (2d Cir. 1993).

7.      CREDIBILITY OF WITNESSES - WEIGHING CONFLICTING TESTIMONY

You are *the* sole judges of each witness's credibility.  That includes the parties.  You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you may try to reconcile it, if reasonably possible, so as to make one harmonious story of it all.  But if you can't do this, then it is your

4

duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at trial. You have the right to distrust such witness's testimony and you may reject all or some of the testimony of that witness or give it such credibility as you think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses.

<u>Authority</u>:  6th Cir. Pattern Jury Instructions, 1.07 Credibility of Witnesses; 7th Cir. Civil Pattern Jury Instructions; 4-76 Modern Federal Jury Instructions-Civil P 76.01.

8.     BIAS

In evaluating the testimony of a witness, you may consider any demonstrated bias, prejudice or hostility of a witness toward any party in determining the weight to be accorded to his or her testimony.

<u>Authority</u>:  *U.S. v. Jackson*, 347 F.3d 598 (6th Cir. 2003); *Latimer v. Burt*, 98 Fed.Appx. 427, 430 (6th Cir. 2004).

9.     PRIOR SWORN STATEMENTS

If you find that a witness made an earlier sworn statement that conflicts with his or her trial testimony, you may consider that contradiction in deciding how much of the trial testimony, if any, to believe.  You may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact or a small detail; whether the witness had an explanation for the inconsistency; and whether that explanation made sense to you.

Your duty is to decide, based on all the evidence and your own good judgment, whether the earlier statement was inconsistent; and if so, how much weight to give to the inconsistent statement in deciding whether to believe the earlier statement or the witness's trial testimony.

Authority:  Fed. R. Evid. 801 (d)(1); *U.S. v. Letner*, 273 Fed.Appx. 491, 498 (6th Cir. 2008).

10.    DEPOSITIONS - USE AS EVIDENCE

Some testimony is in the form of sworn recorded answers to questions asked of a witness before the trial.  This is known as deposition testimony.  This kind of testimony is used when a witness, for some reason, cannot be present to testify in person.  You should consider and weigh deposition testimony in the same way as you would the testimony of a witness who has testified in court.

Authority:  Fed. R. Evid. 801(d), 804(b)(1); Fed. R. Civ. P. 32(a); Ninth Circuit Manual of Model Civil Jury Instructions § 2.6 (2001); 7th Cir. Pattern Jury Instructions, 1.05; *Sandridge v. Salen Offshore Drilling Co.*, 764 F.2d 252, 259 (5th Cir. 1985) (noting that "[a] trial court may not properly instruct a jury that a written deposition is entitled to less weight than live testimony" and, by analogy, improper to instruct a jury that a written deposition is entitled to less weight than a videotaped deposition); *In re Air Crash Disaster*, 635 F.2d 67, 73 (2d Cir. 1980),

6

approving instruction that deposition testimony "is entitled to the same consideration and is to be

judged as to credibility and weighted and otherwise considered by you in the same way as if the

witness has been actually present in court"); *Wright Root Beer Co. v. Dr. Pepper Co.*, 414 F.2d

887, 889-891 (5th Cir. 1969) (finding that it was prejudicial and erroneous to instruct jury that

"discovery" depositions are entitled to less weight than testimony of live witness).

11.     INTERROGATORIES - USE AT TRIAL

       Some of the evidence has been in the form of interrogatory answers.  An interrogatory is

a written question asked by one party of the other, who must answer the question in writing and

under oath, before trial.  You must consider interrogatories and the answers given to them just as

if the questions had been asked and answered here in court.

       <u>Authority</u>:  F.R.C.P. 33(c); 3 Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee,

Federal Jury Practice And Instructions § 102.24 (5th ed. 2000); 7th Cir. Civil Pattern Jury

Instructions.

12.     REQUESTS FOR ADMISSIONS – USE AT TRIAL

       Some of the evidence has been in the form of written admissions.  You must regard an

admission as conclusive proof of all facts that were expressly admitted by the Trustee or a

Defendant, or all facts which the Trustee or a Defendant failed to deny.  In determining whether

or not a Defendant is liable, you are not permitted to disregard or disbelieve the contents of these

requests, even in light of any other evidence presented.  The requests admitted in evidence are

binding and conclusive on the Defendant for purposes of this trial.

       <u>Authority</u>:  F.R.C.P. 36(b); 4-74 Modern Federal Jury Instructions-Civil P 74.08.

13.     PRIOR INCONSISTENT STATEMENT BY A WITNESS

       A witness may be discredited by evidence contradicting what that witness said, or by

evidence that at some other time the witness has said or done something, or has failed to say or

7

do something, that is inconsistent with the witness's present testimony.  It's up to you to determine whether a witness has been discredited and, if so, to give the testimony of that witness whatever weight that you think it deserves.

Authority:  Fed. R. Evid. 613; *Latimer v. Burt*, 98 Fed.Appx. 427, 430 (6th Cir. 2004); *U.S. v. Woods,* 613 F.2d 629, 637 (C.A.Ky. 1980); *U.S. v. Martinez*, 988 F.2d 685 (7th Cir.1993).

14.    EXPERT TESTIMONY

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing the testimony of any other witness.  Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

Authority: Fed. R. Evid. 602, 702-705; 6th Cir. Pattern Jury Instructions, 7.03 Opinion Testimony; 7th Cir. Civil Pattern Jury Instructions; *Coal Resources, Inc. v. Gulf & Western Indus., Inc.*, 865 F.2d 761, 775 (6th Cir. 1989).

15.    EXPERT OPINION MUST BE TO A REASONABLE PROBABILITY

You have heard experts being asked to give opinions based on a reasonable degree of professional certainty.  The expert may offer an opinion only if it is based on a reasonable probability.  Therefore, in order for you to find a fact based on an expert's testimony, that testimony must be based on reasonable probabilities, not just possibilities.

Authority:  F.R.E. 703; *Jahn v. Equine Services, PSC*, 233 F.3d 382, 388 (6th Cir. 2000); *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671 (6th Cir. 2010).

8

16.      OBJECTIONS BY COUNSEL - RULINGS ON EVIDENCE

Lawyers have a duty to object to evidence that they believe has not been properly offered. You should not be prejudiced in any way against lawyers who make these objections or against the parties they represent.  If I have sustained an objection, you must not consider that evidence, and you must not speculate about whether other evidence might exist or what it might be.  If I have overruled an objection, you are free to consider the evidence that has been offered.

The lawyers for both sides objected to some of the things that were said or done during the trial.  Do not hold that against either side.  The lawyers have a duty to object whenever they think that something is not permitted by the rules of evidence.  Those rules are designed to make sure that both sides receive a fair trial.

And do not interpret my rulings on their objections as any indication of how I think the case should be decided.  My rulings were based on the rules of evidence, not on how I feel about the case.  Remember that your decision must be based only on the evidence that you saw and heard here in court.

<u>Authority</u>:  3 Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, Federal Jury Practice and Instructions § 102.70 (5th Ed. 2000), 6th Cir. Pattern Jury Instructions, 1.09 Lawyers' Objections.

17.      INSTRUCTIONS TO BE CONSIDERED AS A WHOLE

I have read a number of instructions to you.  The fact that some particular point may be covered in the instructions more than some other point should not be regarded as meaning that I intended to emphasize that point.  You should consider all the instructions.

<u>Authority</u>: *McCoy v. American Fidelity Bank & Trust Co.*, 715 S.W.2d 228 (Ky. 1986) (noting that the jury is the ultimate decider of facts); *Lotus Development Corp. v. Borland Intern.,*

9

*Inc.*, 788 F.Supp. 78, 82-83 (D.Mass. 1992); Delaware Pattern Jury Instructions, Civil; New Jersey Pattern Jury Instructions, Civil.

18.     COURT IMPARTIALITY

Nothing I have said since the trial began should be taken as an opinion about the outcome of the case.  You should understand that no favoritism or partisan meaning was intended in any ruling I made during the trial or by these instructions.  Further, you must not view these instructions as an opinion about the facts.  You are the judges of the facts, not me.

Authority: *McCoy v. American Fidelity Bank & Trust Co.*, 715 S.W.2d 228 (Ky. 1986) (noting that the jury is the ultimate decider of facts); *Lotus Development Corp. v. Borland Intern., Inc.*, 788 F.Supp. 78, 82-83 (D.Mass. 1992); Delaware Pattern Jury Instructions, Civil; New Jersey Pattern Jury Instructions, Civil; Devitt, Blackmar, et al., Federal Jury Practice and Instructions, §§ 70.13, 70.14 and 71.11 (4th Ed. 1987 & Supp. 1998).

19.     JURY'S DELIBERATIONS

How you conduct your deliberations is up to you.  But, however you conduct those deliberations, please remember that your verdict must represent the considered judgment of each juror.

It is your duty, as jurors, to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges of the facts, not me.  Your sole interest is to seek the

10

truth from the evidence in this case.  In order for you as a jury to return a verdict, a majority of you must agree.  Your verdict does not have to be unanimous.

A verdict form has been prepared for you.  You will take this form to the jury room, and when you have reached agreement as to your verdict, you will have your foreperson fill in, date and sign the form.  You will then return to the courtroom; your foreperson will give the form to my Deputy Clerk; and, your verdict shall be announced.

I caution you that nothing said in these instructions, and nothing in the verdict form, is meant to suggest or convey in any way or manner any indication as to what verdict I think you should find.  What the verdict shall be is your sole and exclusive duty and responsibility.

That concludes the part of my instructions explaining the rules for considering the testimony and evidence.  Now let me finish up by explaining how you may communicate questions or messages to the court.

Once you start deliberating, do not talk to the Jury Officer, to my Deputy Clerk, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the Jury Officer. The question will be given to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.  Any questions or messages should be sent to me through the foreperson, who by custom of this court is juror Number 1.

One more thing about messages.  Do not ever write down or tell anyone else how you stand on your votes.  For example, do not write down or tell anyone else that you are split 4-4, or whatever your vote happens to be.  That should stay secret until you are finished.

11

Let me finish by repeating something I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in favor of either party.  You must decide the case yourselves based on the evidence presented.

Authority: 4-78 Modern Federal Jury Instructions-Civil P 78.01; Modern Federal Jury Instructions-Civil; 5th Cir. Pattern Jury Instructions 2004 (civil); Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions, §74.05 (4th ed. 1987).

20.   **THE TRUSTEE'S CONTENTIONS**

The Trustee contends that, through their ownership and control of ClassicStar, the Defendants planned and did in fact use ClassicStar's mare lease program to generate cash for their separate oil and gas businesses in which ClassicStar and the people who purchased mare leases from ClassicStar had no interest.  Between approximately July 1, 2001 and the date of ClassicStar's bankruptcy filing on September 14, 2007 (sometimes called the "Petition Date" during the trial), approximately $340 million in cash was generated for ClassicStar from mare lease sales.  The Trustee contends that rather than use that cash to perform ClassicStar's obligations and operate a viable thoroughbred horse business in Kentucky, the Defendants misappropriated the vast majority of ClassicStar's free cash for themselves, notably for their separate gas well development businesses, specifically at Defendant, Geostar Corporation and affiliates ("Geostar") and Gastar Exploration, Ltd. and affiliates ("Gastar"), leaving ClassicStar insolvent and unable to meet the obligations that the Defendants caused ClassicStar to take on. The Trustee seeks to recover the misappropriated cash from the Defendants for the estate of ClassicStar and to pay ClassicStar's creditors, who have filed proofs of claim in ClassicStar's bankruptcy case valued at hundreds of millions of dollars.

12

The Trustee asserts a number of legal theories against the Defendants on which he seeks to recover the misappropriated cash, including, among others: breach of fiduciary duty; intention and constructive fraudulent transfers; conversion of property; unjust enrichment; violations of the Utah pattern of unlawful activities statute; civil conspiracy; aiding and abetting; and breach of contract. I will explain these legal theories to you later.

The Trustee contends that the Defendants deliberately planned and carried out their unlawful acts of misappropriating ClassicStar's cash from before the time Defendant, Geostar Corporation and its controlling persons, Defendants, Thomas E. Robinson ("Robinson"), Tony P. Ferguson ("Ferguson"), John W. Parrott ("Parrott"), Frederick J. Lambert ("Lambert"), along with Defendants, David and Spencer Plummer, gained control of ClassicStar in 2000 and 2001, and that the Defendants conspired with and aided and abetted one another in their actions.  The Trustee contends that the Defendants engaged in this misconduct intentionally, as shown by documents stating that the Defendants planned to divert the majority of ClassicStar's cash, did in fact misappropriate the majority of ClassicStar's cash over a number of years, and went to great lengths to conceal their activities through a series of complex schemes.  These schemes included: the use of non-existent "placeholder" horses for mare leases that was never conveyed or bred instead of actually acquiring and breeding thoroughbreds; the use of multiple false "exchange" mechanisms to move participants out of mare leases and into gas working interests that were never documented or actually created; the use of multiple shell companies as replacement investments for the mare leases, such as First Equine Energy Partners, LLC ("FEEP"), First Equine Partners, Inc. ("FEP") and GeoEquities, LLC ("Geoequities"), that were never funded and had no economic substance; and the use of false accounting entities to create the false

13

impression that ClassicStar had been spending most of its cash on its horse operations when in fact the Defendants has transferred most of ClassicStar's cash to themselves.

The Trustee contends that his claims are supported by the fact that after his suit was filed, Defendants, John W. Parrott, David Plummer and Spencer Plummer, as well as ClassicStar's former accountant, Terry L. Green, all pleaded guilty to conspiring to commit federal tax fraud in a criminal case brought by the federal government involving the mare leases. Both David and Spencer Plummer admitted in their guilty pleas that the majority of ClassicStar's cash had been diverted to Geostar, that this left ClassicStar with insufficient funds to obtain thoroughbred horses to satisfy its mare leases and that these facts were concealed from the mare lease participants.

In their guilty pleas, David and Spencer Plummer also admitted to having engaged in other unlawful acts in connection with ClassicStar, including acts of concealment with respect to the activities of the Defendants. In addition, Defendants, Tony P. Ferguson, Thomas E. Robinson, John W. Parrott, Frederick J. Lambert, David Plummer, Spencer Plummer and Jennifer Stahle (Spencer Plummer's sister) have all asserted their privilege against self-incrimination and have refused to testify or to produce documents in the Trustee's case. William E. Bolles, an accountant who kept ClassicStar's accounting and financial records at the offices of Geostar and Gastar in Mount Pleasant, Michigan, and who reported to Mr. Lambert and Mr. Robinson (Mr. Bolles is not a Defendant in the Trustee's lawsuit), refused to testify further in his deposition, citing the need to consult with personal legal counsel. The guilty pleas, plus the numerous Fifth Amendment assertions by key players among the Defendants, firmly support a finding of liability in the Trustee's favor and are evidence that the Defendants' misconduct, as alleged by the Trustee, in fact took place and was intentional.

14

The Trustee alleges extensive damages to the ClassicStar estate as a result of the Defendants' activities between July 1, 2001 and September 14, 2007, when ClassicStar filed for bankruptcy. Specifically, the Trustee contends that the Defendants unlawfully transferred over $185 million in cash from ClassicStar for which nothing of value was received by ClassicStar in exchange. The Trustee further contends that the Defendants also used an additional $30 million of ClassicStar's cash to pay for expenses that were not associated with ClassicStar's thoroughbred horse business, for a total of $215 million in cash misappropriated by the Defendants. These large misappropriations of ClassicStar's cash by the Defendants rendered ClassicStar insolvent, undercapitalized and completely incapable of meeting its obligations. Applying a fair rate of return to this misappropriated cash over the time it has been lost to the ClassicStar estate, the Trustee seeks a total recovery of $295,744,331 from the Defendants. The Defendants as a group, and each Defendant individually, must be held liable for this entire amount.

21.    DEFENDANTS' CONTENTIONS

22.    BURDEN OF PROOF - BY A PREPONDERANCE OF THE EVIDENCE

This is a civil case. The Trustee has the burden of proving his claims and damages by what is called a preponderance of the evidence. The Defendants have the same burden to prove their defenses. Proof by a preponderance of the evidence means proof that something is more likely true than not. It means that certain evidence, when compared to the evidence opposed to it, has the more convincing force and makes you believe that something is more likely true than not.

Preponderance of the evidence does not depend on the number of witnesses. If the evidence as to a particular element or issue is evenly balanced, the party has not proved the element by a preponderance of the evidence, and you must find against that party. In determining whether any fact has been proven by a preponderance of the evidence, you may

15

consider the testimony of all witnesses, regardless of who called them, and all exhibits received into evidence, regardless of who produced them.

Those of you who are familiar with criminal cases will have heard the term proof beyond a reasonable doubt.  That burden does not apply in a civil case.  Therefore, you should put it out of your mind in considering whether or not the Trustee or the Defendants have met their burden of proof on various issues.

<u>Authority</u>:  Pattern Jury Instructions 3rd Cir.; 6th Cir. Pattern Jury Instruction, 1.06 Number of Witnesses; 4-73 Modern Federal Jury Instructions-Civil P 73.01; *In re Winship*, 397 U.S. 358, 371 (1970).

23.    ADVERSE INFERENCES

During the trial, you have heard that witnesses have declined to testify, both at trial and in depositions before trial, and have refused to answer written interrogatories or to produce documents requested by the Trustee before trial, and have refused to provide factual information relating to the Trustee's case, because they have invoked their right against self-incrimination under the Fifth Amendment of the Constitution of the United States.  You are permitted, but not required, to draw an adverse inference against the party from the witness's invocation of the privilege against self-incrimination.  This means that you can, but are not required, to infer that the witness's answer would have been adverse or unfavorable to him or her.  You are also permitted, but not required, to extend that negative inference to a corporation or other entity named as a Defendant in the case for which the individual who has asserted the right against self-incrimination worked or which they represented in some capacity.  In this case, the following individual Defendants have asserted the right against self-incrimination:  Tony P. Ferguson; Thomas E. Robinson; John W. Parrott; Frederick J. Lambert; William E. Bolles; Boyce J.

16

Sanderson; David Plummer; Spencer Plummer; and Jennifer Stahle.  In addition, the former accountant for David Plummer, Buffalo Ranch and ClassicStar, Terry L. Green, who is not a Defendant in this case, has also asserted the right against self-incrimination.  David Plummer, Spencer Plummer, John W. Parrott and Terry L. Green, have also each pleaded guilty to conspiring to commit federal tax fraud in a criminal matter brought by the federal government related to the ClassicStar mare leases.

Authority:  *Sentinel Trust Co. v. Namer*, 172 F.3d 873 (6th Cir. 1998) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 319 (1976)); *Youngstown Osteopathic Hospital Association v. Pathways Center for Geriatric Psychiatry, Inc.*, 280 B.R. 400 (Bankr. N.D. Ohio 2002); *Davis v. Mutual Life Ins. Co. of NY*, 6 F.3d 367, 384-85 (6th Cir. 1993) (use of non-party's witness invocation of the 5th amendment is permitted to infer guilt against a defendant under proper circumstances); *LiButii v. US*, 107 F.3d 110, 112 (2d Cir. 1997).

24.    THE LAW

I have explained to you several rules that apply to all jury cases.  I am now going to instruct you as to the specific rules of law that govern this case and the evidence that you have heard.

25.    CAPACITY AND ROLE OF THE TRUSTEE

The Plaintiff in this case, James D. Lyon, is the Chapter 7 Trustee of ClassicStar.  He was appointed to that position by the Office of the United States Trustee for the Eastern District of Kentucky, which is part of the United States Department of Justice.  It is the job of the Office of the United States Trustee to appoint Chapter 7 trustees such as Mr. Lyon.  Mr. Lyon was appointed to his position on April 14, 2008 and is responsible for working in the public interest in overseeing the affairs of ClassicStar while it is in Chapter 7, for the benefit of ClassicStar's estate and its creditors.  Therefore, in this case, if you decide something in favor of ClassicStar

17

you are also deciding it in favor of the Trustee and vice versa.  Mr. Lyon reports to the United States Bankruptcy Court for the Eastern District of Kentucky and to the Office of the United States Trustee on all matters relating to ClassicStar.

As the Trustee of ClassicStar, Mr. Lyon is empowered by the United States Bankruptcy Code to bring lawsuits on behalf of the estate of ClassicStar to recover money and other assets for ClassicStar's estate and is permitted, with the bankruptcy court's approval, to hire lawyers and other professionals, such as accountants and other financial experts, to assist him in carrying out his duties.  All recoveries obtained by the Trustee, including recoveries in this lawsuit, will be used to pay for the cost of administering ClassicStar's Chapter 7 case and to re-pay the creditors of ClassicStar.

Authority:  *See* 11 U.S.C. §§ 323, 327, 541, 704, 726; *In re National Century Financial Enterprises, Inc., Inv. Lit.,* 604 F.Supp.2d 1128, 1137-38 (S.D.Ohio 2009) (finding that the Trustee has the power to bring claims such as breach of fiduciary duty and declining to follow the *Wagoner* rule); *Cable v. Ivy Tech State College*, 200 F.3d 467, 472 (7th Cir. 1999); *In re PWS Holdings Corp.*, 303 F.3d 308, 313-314 (3d Cir. 2002).

26.    BREACH FIDUCIARY DUTY – DUTIES OF CARE AND LOYALTY, SELF-DEALING

A.    General Instruction on Fiduciary Duties

The Trustee has brought claims in this case alleging that certain Defendants were fiduciaries of ClassicStar because they were officers, directors, managers and/or persons in control of ClassicStar and that those Defendants breached their fiduciary duties owed to ClassicStar.  The Trustee, as the Plaintiff, must prove, by a preponderance of the evidence, as I have defined that phrase for you, that a fiduciary relationship existed between ClassicStar and

18

the Defendants and that the Defendants were acting as ClassicStar's fiduciaries when one or more of them engaged in the wrongful acts the Trustee alleges.

A fiduciary relationship is one in which one party, known as the principal (in this case ClassicStar was the principal), has a unique degree of trust and confidence in the other party, known as the fiduciary (in this case, the Trustee alleges that certain of the Defendants were fiduciaries of ClassicStar), who has superior knowledge, skill, or expertise, and who has a duty to act on behalf of the interests of the principal.  You may find that a fiduciary responsibility existed only where one party is unable to protect its interests fully or where one party has a high degree of control over the property or subject matter of another and the unprotected party has placed its trust and confidence in the other.  Individuals or entities that own, manage and/or control a company such as ClassicStar, are considered by the law to be fiduciaries of that company and owe that company fiduciary duties.

It is for you to determine, after consideration of all the evidence relevant to this point, whether a relationship of special trust and confidence existing between ClassicStar and these Defendants, who then exercised superiority, influence and/or control over the ClassicStar's property or interests.

If the Trustee has failed to prove that these Defendants had a fiduciary relationship with ClassicStar, then you would return a verdict for the subject Defendant or Defendants on the Trustee's breach of fiduciary duty claims.  If the Trustee has satisfied his burden of proving that a Defendant or the Defendants owed ClassicStar a fiduciary duty, then you will proceed to determine if these Defendants breached that duty in any of the ways alleged by the Trustee.

In this case, the Trustee has alleged several types of breaches of fiduciary duty by certain of the Defendants.  I am going to instruct you on the different types of breaches and the law for each.

Authority:  *Patmon v. Hobbs*, 280 S.W.3d 589, 593 (Ky.App. 2009) (fiduciary relationship exists "it exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence."  "Further, the Court held that even in the absence of a statutorily imposed duty, an officer or director of a company owes a fiduciary duty to the company."); *Aero Drapery of Kentucky, Inc. v. Engdahl*, 507 S.W.2d 166, 168 (Ky.1974); *Steelvest, Inc. v. Scansteel Service Cntr., Inc.,* 807 S.W.2d 476, 484-86 (Ky. 1991).

B.	Liability of a Fiduciary for Breach of Duties of Care and Loyalty

A fiduciary owes the duty of care and the duty of loyalty to the company, here to ClassicStar.  The duty of care means that the fiduciary must exercise care when making decisions. In other words, the fiduciary has the duty to act on an informed basis.  In making informed decisions, the fiduciaries are expected to consider all material information reasonably available to them and to have a reasonable knowledge of the company's business.  A fiduciary, though, will not be liable for honest mistakes of judgment as long as they acted in good faith and after reasonable investigation of the facts available.  Examples of when a fiduciary has failed to act with care include: making rushed decisions; lack of preparation; lack of questioning before making decisions; lack of care when reviewing or understanding documents, etc.

A fiduciary also has a duty to act with loyalty to the company.  The duty of loyalty means that the fiduciary must always act in the best interests and welfare of the company.  If the fiduciary has an interest which is not consistent with the interest of the company, then the duty of

20

loyalty is implicated and the fiduciary must act in the best interest of the company and put aside his personal interests, even if the resulting action is detrimental to the fiduciary's own personal interests.  The duty of loyalty also means that the fiduciary must act at all times in good faith.  A fiduciary acts in bad faith when he or she acts with a purpose other than advancing the best interests of the company, either motivated by an intent to do harm to the company or a failure to act when there was a duty to act or acting on a matter for personal gain to the detriment of the company.

ClassicStar is a limited liability company, or an "LLC" for short.  All owners (referred to as "members"), managers or other persons or entities in control of an LLC such as ClassicStar, owe fiduciary duties of care and loyalty to the limited liability company.

In order to prevail on his breach of fiduciary claims, the Trustee must prove, by a preponderance of the evidence that:  (1) a Defendant or Defendants were fiduciaries of ClassicStar; (2) a Defendant or Defendants breached either the duty of care or the duty of loyalty to ClassicStar; and (3) that the breaches of fiduciary duty caused damage to ClassicStar.

In this count, the Trustee alleges that the Defendants, Geostar Corporation, Tony P. Ferguson, Thomas E. Robinson, John W. Parrott, Frederick J. Lambert, David Plummer, Spencer Plummer, Shane Plummer, Jennifer Stahle, Boyce J. Sanderson, ClassicStar Farms, Inc. (which is not the same entity as the entity represented in this case by the Trustee, which is ClassicStar, LLC), Tartan Business, L.C., Cadillac Farms, Inc. and Strategic Opportunity Solutions, LLC, doing business as Buffalo Ranch, were fiduciaries of ClassicStar and breached their fiduciary duty owed to ClassicStar in the following specific ways by: selling Mare Leases when they knew there were insufficient thoroughbred or performance horses to fill those Mare Leases; failing or refusing to supply sufficient horses to ClassicStar so it could meet its Mare Lease obligations;

21

allocating horses to Mare Leases when the horses did not exist or were knowingly in short supply and could not be provided; greatly overvaluing horses that were allocated to Mare Leases; transferring ClassicStar's cash to NELC to "fund" circular loans made by NELC to finance Mare Lease purchases; paying excessive "commissions" to themselves and to others for Mare Lease sales when many if not all of those sales were worthless to ClassicStar; attempting to use performance horses as mere "place holders" in the Mare Leases instead of providing actual thoroughbreds, with no intention of actually providing or breeding those performance horses; "exchanging" or "trading out" "place holders" or greatly over-valued "equine" interests in Mare Leases for non-existent working interests in gas wells; attempting to conceal their breaches and related activities through a number of schemes and through manipulation of ClassicStar's books and records by showing "accrued expenses" that were never incurred; diverting $215 million of ClassicStar's cash to themselves or for their own benefit for nothing in exchange to ClassicStar and failing to use those funds to benefit ClassicStar and its business; moving funds diverted from ClassicStar to Defendant, Geostar Corporation and affiliates ("Geostar") and to Gastar Exploration, Ltd. ("Gastar") and affiliates and elsewhere to put the cash out of ClassicStar's reach and to conceal their activities thereby rendering ClassicStar insolvent, undercapitalized and with insufficient cash to pay its obligations.

If you find that the Trustee has proven, by a preponderance of the evidence, that the Defendants violated the fiduciary duties they owed to ClassicStar in one or more of the ways alleged, then you will proceed to determine if the breach of fiduciary duty proven caused the damages that the Trustee claims resulted from those breaches.

Authority:  KRS § 271B.8-300; KRS §§ 275.170(1) and (2); *Patmon v. Hobbs*, 280 S.W.3d 589  (Ky.App. 2009); *Reinhardt v. Owensboro Planing Mill Co.*, 215 S.W. 523 (Ky.App.

1919); *Allied Ready Mix Co., Inc. ex rel. Mattingly v. Allen*, 994 S.W.2d 4, 8 (Ky.App. 1998) (outlining the business judgment rule); *Cede & Co. v. Technicolor*, Inc., 634 A.2d 345, 367 (Del.1993); *Durbin v. Bank of Bluegrass & Trust Co*., 2006 WL 1510479, at *3 (Ky.App. 2006); *Doe v. Golden & Walters, PLLC*, 173 S.W.3d 260, 269 (Ky.App. 2005) (citing *Sparks v. Re/Max Allstar Realty, Inc*., 55 S.W.3d 343, 348 n. 15 (Ky.App.2000)).

     C.     Liability of A Fiduciary for Self-Dealing

The Trustee also claims that the Defendants breached their fiduciary duties to ClassicStar by engaging in transactions where they had an interest, or self-interested transactions.  As noted previously, certain of the Defendants I just listed to you above (Defendants, Geostar Corporation, Tony P. Ferguson, Thomas E. Robinson, John W. Parrott, Frederick J. Lambert, David Plummer, Spencer Plummer, Shane Plummer, Jennifer Stahle, Boyce J. Sanderson, ClassicStar Farms, Inc. (which is a separate entity from ClassicStar, LLC, which the Trustee represents) Tartan Business, L.C., Cadillac Farms, Inc. and Strategic Opportunity Solutions, LLC, doing business as Buffalo Ranch) owed a duty of loyalty to ClassicStar.  The duty of loyalty also required that any transaction between these fiduciary Defendants and ClassicStar be fair and reasonable to ClassicStar.

Our law presumes that if the fiduciary gained any financial advantage or benefit at the expense of the company, that benefit or advantage was acquired in breach of the fiduciary's duty owed to the company.  As a consequence, in a claim for breach of the fiduciary duty of loyalty, the law shifts the burden of proof of self-dealing from the Trustee to the fiduciary to prove that the transaction which resulted in a benefit to the fiduciary was the product of fair dealing, in good faith and involved full disclosure.  This does not mean that the fiduciary can never engage

23

in self-interested transactions.  Rather, if the fiduciary does engage in a transaction with the company, it must be entirely fair.

In determining "fairness," a transaction is considered fair if the transaction is not manifestly unfair to the company or if the transaction is fair and reasonable to the company.  In determining whether the transaction was fair, you should look at all aspects of the transaction, including the process involved, whether there was a fair price and whether there was fair dealing. When determining whether there was fair dealing, you should look at things such as the timing of the transaction, how it was initiated and negotiated, whether the transaction was approved and entered into at arm's length, etc.  When looking at whether there was a fair price, you should look at the economic and financial considerations of the transaction.

In addition, the fiduciary (here, the Defendants you find to be fiduciaries to ClassicStar) is required to prove proper conduct by the heightened standard of clear and convincing evidence. The burden of proving something by clear and convincing evidence is a higher standard of proof than the preponderance of the evidence standard.  To prove something by clear and convincing evidence, the party must produce evidence that is substantial and that establishes for you a very high probability that the facts asserted are true.

In this case, the Trustee has alleged that the Defendants, acting as ClassicStar's fiduciaries, engaged in self-dealing by attempting to enrich themselves with large transfers of ClassicStar's cash and placing that diverted funds, and any assets acquired with that cash, beyond the reach of ClassicStar and its creditors by, among other things, engaging in the various transactions described at trial including those with Geostar and its affiliates, with Gastar and its affiliates and with Buffalo Ranch and its affiliates; and through these acts deliberately rendering

24

ClassicStar insolvent, with its liabilities far exceeding its assets, undercapitalized and unable to pay its debts, including the Mare Leases and related obligations, as they matured.

If the Defendants have proven by clear and convincing evidence, that any financial gain or benefit they acquired was the result of fair dealing with respect to ClassicStar and not the product of self-dealing, then you would return a verdict for the Defendants on this count.

If the Defendants have failed to meet their burden of proof, then you should proceed to consider whether the Trustee has proven, by a preponderance of the evidence, the amount of damages, that resulted from the Defendants' breach of fiduciary duty.

Authority:  KRS § 271B.8-310; KRS § 275.170; KRS § 271A.205; *Nelson v. Gammon*, 478 F. Supp. 630, 638 (W.D. Ky. 1979); *Steelvest, Inc. v. Scansteel Service Cntr., Inc.*, 807 S.W.2d 476, 484 (Ky. 1991); *Orlett v. Cincinnati Microwave, Inc.*, 953 F.2d 224 (6th Cir. 1990); *Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261, 282 (1990) (describing "clear and convincing" as intermediate standard of proof).

27.    BREACH OF FIDUCIARY DUTY – INSOLVENCY

The Trustee also claims that the Defendants breached their fiduciary duties to ClassicStar and to its creditors arising from ClassicStar's bankruptcy or what is known as "insolvency". When a company is insolvent, the people in charge (*i.e.*, the fiduciaries) owe fiduciary duties not only to the company but also to the company's creditors.  A company is insolvent when the sum of its debts is greater than the sum of its assets, at a fair valuation, excluding property transferred, concealed or removed with the intent to hinder, delay or defraud the company's creditors.  A company is also insolvent when it is undercapitalized for the nature of its business or has insufficient cash to meet its obligations.

25

As outlined above, fiduciaries owe the company (here ClassicStar) the duties of loyalty and care, meaning that the fiduciary must act on an informed basis and in the best interest of the company.  Included in these duties, the fiduciaries have the duty to attempt to maximize the economic value of the company and not harm the economic value of the company.  However, the law recognizes that there are risks in every business transaction, and business failure is always a risk.  Therefore, fiduciaries are allowed to take economic risks for the benefit of the company, so long as they comply with their fiduciary duties.  The law also recognizes that simply because a fiduciary took a risk that did not pan out, or that made the company insolvent, does not mean that the fiduciary breached his duties.  Rather, you must look at whether the fiduciaries complied with their duties of loyalty and care.

To prove a breach of fiduciary duty based on ClassicStar's insolvency, the Trustee must prove that:

1.      The Defendants owed fiduciary duties to ClassicStar;

2.      At the time the Defendants owed fiduciary duties to ClassicStar, ClassicStar was insolvent or became insolvent, and therefore, the Defendants also owned their fiduciary duties to ClassicStar's creditors; and

3.      The Defendants breached their fiduciary duties to ClassicStar and its creditors by engaging in the conduct alleged by the Trustee that I previously described and which caused economic damage to ClassicStar.

Authority:  *ASARCO* LLC *v. Americas Mining Corp.*, 396 B.R. 278, 415 (S.D.Tex.,2008); *Bank of Am. v. Musselman*, 222 F.Supp.2d 792, 798 (E.D.Va. 2002); I*n re USDigital, Inc.*,  2011 WL 30974, at *10 (Bkrtcy.D.Del. 2011); *Prod. Res. Group LLC v. NCT Group*, 863 A.2d 772 (Del. Ch. 2004) ("When a firm has reached the point of insolvency, it is settled that under

26

Delaware law, the firm's directors are said to owe fiduciary duties to the company's creditors. This is an uncontroversial proposition and does not completely turn on its head the equitable obligations of the directors to the firm itself. The directors continue to have the task of attempting to maximize the economic value of the firm. That much of their job does not change. But the fact of insolvency does necessarily affect the constituency on whose behalf the directors are pursuing that end. By definition, the fact of insolvency places the creditors in the shoes normally occupied by the shareholders-that of residual risk-bearers.") (internal citations omitted); *Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d 784, 787 (Del. Ch. 1992) ("[W]hen the insolvency exception [arises], it creates fiduciary duties for directors for the benefit of creditors.").

28.     AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

The Trustee has also alleged that certain Defendants aided and abetted the breaches of fiduciary duty.

A Defendant is liable, even if he/she did not personally commit the act or acts constituting a breach of fiduciary duty, if you find that such Defendant aided and abetted in the breach. To prove that a Defendant is liable for aiding and abetting, the Trustee must prove that:

1.     There was a breach of the Defendants' fiduciary duty owed to ClassicStar; and

2.     The Defendants knew about the wrongful activity that constituted the breach and knowingly participated in that breach by aiding, counseling, commanding, inducing or procuring the person who committed the breach to engage in the activity.

It is not enough that the Defendant unknowingly did things that were helpful to the person who breached a fiduciary duty. The evidence must show that the Defendant acted with knowledge to help that person breach their duty.

27

If you find that the Trustee has failed to prove, by a preponderance of the evidence, any of his allegations of aiding and abetting a breach of fiduciary duty, then you will return a verdict for the Defendant on that count.

However, if you find that the Trustee has proven, by a preponderance of the evidence, that the a Defendant or Defendants aided and abetted a breach of a fiduciary duty owed to ClassicStar in one or more of the ways alleged, then you will proceed to determine if the concerted action of the fiduciary and the Defendant or Defendants that aided and abetted the breach caused the damages which the Trustee claims resulted from the breach.

Authority:  *Gundaker v. Clark*, 2008 U.S. Dist. LEXIS 80908 (E.D. Ky. 2008); *Steelvest, Inc. v. Scansteel Service Cntr., Inc.*, 807 S.W.2d 476, 485 (Ky. 1991).

29.    INTENTIONAL FRAUDULENT TRANSFER - KRS § 378.010

The United States Bankruptcy Code gives the Trustee power to "avoid", or in other words, to take back for the bankruptcy estate of ClassicStar, certain transfers of cash or other assets made from ClassicStar (or obligations incurred by ClassicStar) that occurred in the period before ClassicStar's bankruptcy was filed on September 14, 2007.  The law defines "transfer" very broadly to include virtually every conceivable, voluntary or involuntary, disposition of property of any kind owned by ClassicStar or in which ClassicStar had an interest, including, for example, the transfer of ClassicStar's cash from ClassicStar to the Defendants.  Cash or other property transferred by mare lease participants to ClassicStar to pay for mare leases, was the property of ClassicStar and not the property of another party.

The Trustee has also alleged that the Defendants are liable to him under Kentucky law for intentional fraudulent transfers.  In order to prove intentional fraudulent transfers under Kentucky law, the Trustee must prove, by a preponderance of the evidence, that:

28

1.      ClassicStar made a transfer or transfers of its property, or of an interest it held in property;

2.      The transfers were made with the intent to hinder, delay or defraud ClassicStar's past, present or future creditors;

3.      The person or entity receiving the transfers knew or should have known of the fraudulent intent of the transfers.

In this case, the Trustee seeks to recover fraudulent transfers made by ClassicStar during the period July 1, 2001 through September 14, 2007, the date ClassicStar filed for bankruptcy. Under Kentucky law, the Trustee can sue to recover fraudulent transfers for up to five (5) years after the transfers were made or reasonably could have been discovered.  The United States Bankruptcy Code gives the Trustee two years from the date of the filing of ClassicStar's bankruptcy petition on September 14, 2007, to bring claims to avoid fraudulent transfers that were made up to five (5) years before the bankruptcy filings.  Under some circumstances the Trustee can go back more than five years.  If you find that the transfers the Trustee seeks to recover were hidden or concealed or otherwise could not have been discovered by a reasonable person until more than five years after those transfers were made, then you must find that the Trustee can recover transfers made by ClassicStar going back to July 1, 2001, which is approximately fourteen (14) months longer than five (5) years before ClassicStar's bankruptcy filing.

Fraudulent intent under Kentucky state law can be inferred from the surrounding circumstances.  And whether the person or entity that received or benefitted from the transfers, knew or should have known of the fraudulent intent, does not need to be proven with direct evidence but can be inferred from the circumstances.  With both, you should look at the totality

29

of the facts and circumstances to make that determination. Although it is difficult to determine whether or not ClassicStar specifically intended to hinder, delay, or defraud any entity or person, certain fact patterns, referred to as "badges of fraud," will usually indicate fraudulent intent. These fact patterns may include, but are not limited to:

1.      a close relationship between ClassicStar and the person or entity that received or benefitted from the transfers;

2.      the involvement of insiders of ClassicStar, such as fiduciaries of ClassicStar or other persons who had a close relationship with ClassicStar or with its fiduciaries or controlling persons or companies;

3.      secrecy or concealment or attempts at secrecy or concealment in connection with the transfers;

4.      transfers made not in the usual course of business;

5.      the absence of any value or only inadequate value received by ClassicStar in exchange for the transfers at the time the transfers were made;

6.      the insolvency of ClassicStar at or near the time of the transfers or as a result of the transfers;

7.      the presence of dummy or artificial entities such as shell companies with little or no assets, operations or employees;

8.      the presence of lawsuits or the threat of lawsuits against ClassicStar and/or persons or entities affiliated with ClassicStar or threatened or pending governmental investigations of ClassicStar and/or of persons or entities affiliated with ClassicStar;

9.      the assertion of the right against self-incrimination by ClassicStar's insiders in connection with ClassicStar's affairs; and

10.     guilty pleas by individuals affiliated with the activities of ClassicStar.

In determining whether intent to hinder delay and defraud was present at or near the time of the transfers, you are not limited to the ten examples set forth above but are free to examine all circumstances surrounding the Trustee's claims.  If you find that one or more "badges of fraud" existed, you can presume that there was intent to hinder, delay or defraud.

Authority:  *Madison Capital Co., LLC v. Smith*, 2009 WL 482093, at *5 (W.D.Ky. 2009) (citing *In re Triple S Restaurants, Inc.*, 422 F.3d 405, 414 (6th Cir.2005)); *Russell City. Feed Mill, Inc. v. Kimbler*, 520 S.W.2d 309, 312 (Ky.1975); *Sweeney v. Farmers State Bank*, 219 Ky. 471 (1927).

30.     INTENTIONAL FRAUDULENT TRANSFERS - 11 U.S.C. § 548

In addition to Kentucky state law, § 548 of the United States Bankruptcy Code also gives the Trustee power to "avoid", or in other words take back for the bankruptcy estate of ClassicStar, certain cash or other assets transferred from ClassicStar that occurred in the period before ClassicStar filed for bankruptcy on September 14, 2007.  The Bankruptcy Code defines "transfer" very broadly to include virtually every conceivable voluntary or involuntary disposition of any property of any kind owned by ClassicStar or in which ClassicStar had an interest, including, for example, the transfer of ClassicStar's cash from ClassicStar to the Defendants.  Cash or other property transferred by mare lease participants to ClassicStar for mare leases was the property of ClassicStar and not the property of another party.

In the case before you, the Trustee seeks to recover intentional fraudulent transfers of ClassicStar's cash.  To prove intentional fraudulent transfers, the Trustee must show, by a preponderance of the evidence, that:

31

1.      ClassicStar made a transfer or transfers of its property, or of an interest it held in property;

2.      The transfers were made by ClassicStar with the actual intent to hinder, delay, or defraud ClassicStar's past, present or future creditors; and

3.      The transfers were made within two (2) years before September 14, 2007, the date of the filing of ClassicStar's bankruptcy petition, or within a longer period before September 14, 2007 if you find that the transfers the Trustee seeks to recover were hidden or concealed or otherwise could not have been discovered by a reasonable person for more than two years after they were made, in which case you may include transfers that the Trustee seeks to recover going back to July 1, 2001.

ClassicStar's state of mind is important and must be examined to determine whether such hindrance, delay or intent to defraud occurred.  Because it is a company, ClassicStar could only act through its human representatives, some of whom are Defendants in this case.  Although the financial condition of ClassicStar may be considered in determining state of mind, this type of fraudulent transfer may still exist even if ClassicStar was not insolvent at the time the transfers were made or the debts were incurred.

Fraudulent intent can be difficult to determine.  That is because fraudulent intent is usually not based on direct proof, but rather on circumstantial evidence, and is often concealed.  Although it is difficult to determine whether or not ClassicStar, through its human representatives at the time, specifically intended to hinder, delay, or defraud any creditors, just as under Kentucky state law certain fact patterns, or "badges of fraud," will indicate fraudulent intent. Examples of such "badges of fraud" include, but are not limited to:

32

1.      a close relationship between ClassicStar and the person or entity that received or benefitted from the transfers;

2.      the involvement of insiders of ClassicStar, such as fiduciaries of ClassicStar or other persons who had a close relationship with ClassicStar or with its fiduciaries or controlling persons or companies;

3.      secrecy or concealment or attempts at secrecy or concealment in connection with the transfers;

4.      transfers made not in the usual course of business;

5.      the absence of any value or only inadequate value received by ClassicStar in exchange for the transfers at the time of the transfers were made;

6.      the insolvency of ClassicStar at or near the time of the transfers or as a result of the transfers;

7.      the presence of dummy or artificial entities such as shell companies with little or no assets, operations or employees;

8.      the presence of lawsuits or the threat of lawsuits against ClassicStar and/or persons or entities affiliated with ClassicStar or threatened or pending governmental investigations of ClassicStar and/or of persons or entities affiliated with ClassicStar;

9.      the assertion of the right against self-incrimination by ClassicStar's insiders in connection with ClassicStar's affairs; and

10.     guilty pleas by individuals affiliated with the activities of ClassicStar.

In determining whether intent to hinder, delay and defraud was present at or near the time of the transfers that the Trustee seeks to avoid and recover, you are not limited to the ten examples set forth above but are free to examine all circumstances surrounding to the Trustee's

33

claims.  If you find that one or more "badges of fraud" existed, you can presume that there was

intent to hinder, delay or defraud.

Authority:  11 U.S.C. §§ 101(54), 548; KRS § 275.240; *In re Triple S Restaurants, Inc.,*

422 F.3d 405, 414 (6th Cir.2005); *Kelly v. Armstrong*, 141 F.3d 799, 802 (8th Cir. 1998); *In re*

*SMTC Mfg. of Texas,* 421 B.R. 251 (Bkrtcy.W.D.Tex. 2009); *In re Draper*, 355 B.R. 607, 610-

11 (Bkrtcy.E.D.Ky. 2006)

31.     BADGES OF FRAUD – SHIFT OF THE BURDEN OF PRESENTING EVIDENCE

        If you find that any "badge" of fraud was present for the Trustee's claims for intentional

fraudulent transfers under the Bankruptcy Code and/or under Kentucky state law, then the

burden of coming forward with evidence shifts to the Defendants.  This means that the

Defendants must come forward and present evidence sufficient to rebut the presence of

fraudulent intent or you are to find in favor of the Trustee on all intentional fraudulent transfer

counts.  In other words, the Defendants must prove by clear and convincing evidence that the

transfers were made for valid consideration and in good faith.

        Authority:  *Sweeney v. Farmers State Bank*, 293 S.W. 2d 959 (1927); KRS § 378.010; *In*

*re Draper*, 355 B.R. 607 610-11 (Bkrtcy.E.D.Ky. 2006); *Madison Capital Co., LLC v. Smith*,

2009 WL 482093, at *5 (W.D.Ky. 2009) (citing *In re Triple S Restaurants, Inc.*, 422 F.3d 405,

414 (6th Cir.2005)); *Russell City. Feed Mill, Inc. v. Kimbler*, 520 S.W.2d 309, 312 (Ky.1975).

32.     KNOWLEDGE OF INSOLVENCY BY THE DEFENDANTS

        To find for Trustee, you are not required to find that the Defendants knew that

ClassicStar was insolvent.  It is enough if there was reasonable cause to believe that ClassicStar

was insolvent at the time of the transfers.  A Defendant will be said to have reasonable cause to

believe that ClassicStar was insolvent if they knew facts that would lead a reasonable person to

inquire and that person failed to make an inquiry.  That person then  is charged with knowledge of facts an inquiry would reveal.

In other words, a person may not willfully close his eyes and remain in ignorance of ClassicStar's condition.  If a reasonable person would have reason to make an inquiry, a Defendant is chargeable with notice of all facts which a reasonably diligent inquiry would have disclosed.  And if a Defendant fails to make an inquiry when he has a duty to do so, he will be charged with all the knowledge that he would have acquired had he conducted such an investigation.

Authority:  *In re A. Fassnacht & Sons, Inc.*,826 F.2d 458, 461 (6th Cir. 1987) (citing *Cissell v. First National Bank of Cincinnati*, 476 F.Supp. 474, 484 (S.D. Ohio 1979); 3 Collier on Bankruptcy (Part 2) ¶ 60.53[1] (1977); *In re Hygrade Envelope Corp.*, 366 F.2d 584, 586-90 (2d Cir.1966)). *Matter of Vecco Const. Industries, Inc.*, 9 B.R. 866, 875 (Bkrtcy.Va. 1981).

33.    INVOLVEMENT OF COMPANY INSIDERS

An "insider" of a company such as ClassicStar is someone or some entity with a close relationship to the company.  An officer, director, managing agent or person or entity in control of a company are examples of insiders, as are other companies that own or control the subject company and persons or companies affiliated with them.  Relatives, such as family members of an insider, are also insiders.  However, whatever constitutes an insider will be governed by the facts of a particular case.

The activities of insiders with respect to a company, especially one in financial distress such as ClassicStar, are subject to a high degree of scrutiny by the law.  The Trustee has alleged that many of the Defendants such as Geostar Corporation and its affiliates, Tony P. Ferguson, Thomas E. Robinson, John W. Parrott, Frederick J. Lambert, David Plummer, Spencer Plummer,

35

Shane Plummer, Jennifer Stahle, Buffalo Ranch, Boyce Sanderson, ClassicStar Farms, Inc., Tartan Business, LC, Cadillac Farms, Inc., Gastar Exploration, Ltd. and Debora Plummer, were insiders of ClassicStar.  If you find that these Defendants, or any other Defendants, were insiders of ClassicStar over the time period in question (July 1, 2001 through September 14, 2007), then you are required by law to subject the activities of those insiders to a high degree of scrutiny.

Authority:  11 U.S.C. § 101(31); *In re Krehl*, 86 F.3d 737, 741 (quoting S. Rep. No. 989, 95th Cong. 2d Sess., at 24, *reprinted in* U.S.C.C.A.N. 57878, 5810); *Alt v. Burt*, 242 S.W. 2d 974, 980  (Ky. Ct. App. 1951); *Hayes v. Rodgers*, 447 S.W. 2d 597, 600 (Ky. 1969).

34.    CONSTRUCTIVE FRAUDULENT TRANSFERS – KRS § 378.020

Trustee has also alleged that the Defendants are liable for constructive fraudulent transfers under Kentucky law.  In order to prove a constructive fraudulent transfer under Kentucky law, the Trustee must prove, by a preponderance of the evidence, that:

1.    ClassicStar made a transfer or transfers of its property or of an interest in its property;

2.    The transferee (the person or entity that received the transfers), or the person or entity that benefitted from the transfers, did not pay fair or equivalent consideration in exchange for the transfers when they were made; and

3.    ClassicStar was: (i) insolvent when the transfers were made or became insolvent as a result of the transfers; or (ii) was engaged in a business for which its remaining assets were unreasonably small for that business; or (iii) ClassicStar intended to incur or believed or should reasonably have believed that it would incur debts beyond its ability to pay as they came due.

If you decide that the Trustee has proven the above, then you do not have to find that there was intent to defraud.  And, you must find for the Trustee on this claim.

36

In this case, the Trustee seeks to recover fraudulent transfers made by ClassicStar for the period July 1, 2001 through September 14, 2007, the date ClassicStar filed for bankruptcy. Under Kentucky law, the Trustee can sue to recover fraudulent transfers for up to five (5) years after the transfers were made or reasonably could have been discovered.  The United States Bankruptcy Code gives the Trustee two years from the date of the filing of ClassicStar's original bankruptcy petition on September 14, 2007, to bring claims to avoid fraudulent transfers that were made up to five (5) years before the bankruptcy filings.  If you find that the transfers the Trustee seeks to recover were hidden or concealed or otherwise could not have been discovered by a reasonable person more than five (5) years after those transfers were made, then you must find that the Trustee can recover transfers made by ClassicStar going back to July 1, 2001, which is approximately fourteen months more than five years before ClassicStar's bankruptcy filing.

In determining what is fair or equivalent consideration, you should look at the totality of the circumstances of the transfers at the time the transfers were made, which might include:

1.     the "fair market value" of the benefit received by ClassicStar in exchange for the transfers;

2.     the existence of an arm's length relationship between ClassicStar and the person or entity that received the transfers (referred to as the "transferee");

3.     the good faith of the parties; and

4.     the difference between the amount transferred by ClassicStar and the fair market value of what was received by ClassicStar in exchange.

If you decide that the Trustee has proven these elements, the Trustee does not have to prove that ClassicStar intended to defraud creditors when it made the transfers and you must find for the Trustee on this claim.

Authority: KRS § 378.020; *In re Draper*, 355 B.R. 607 610-11 (Bkrtcy.E.D.Ky. 2006); *In re Wilkinson*, 196 Fed.Appx. 337 (6th Cir. 2006); 11 U.S.C. §§ 108(a), 546(a).

35.    CONSTRUCTIVE FRAUDULENT TRANSFERS - 11 U.S.C. § 548

The Trustee has also alleged that the Defendants are liable for constructive fraudulent transfers under § 548 of the United States Bankruptcy Code.  In order to prove constructive fraudulent transfers, the Trustee must prove, by a preponderance of the evidence, that:

1.    ClassicStar made a transfers or transfer of its property or of an interest in its property;

2.    The transfer or transfers were made by ClassicStar within two (2) years before September 14, 2007 (the date of the filing of ClassicStar's bankruptcy petition) or within a longer period if you find that the transfers the Trustee seeks to recover were hidden or concealed or otherwise could not have been discovered by a reasonable person until more than two (2) years after they were made, in which case you should include transfers that the Trustee seeks to recover going back to July 1, 2001;

3.     ClassicStar received less than reasonably equivalent value in exchange for the transfers; and,

4.    ClassicStar was insolvent at the time of the transfers or became insolvent as a result of the transfers.

In determining what is "reasonably equivalent value," you should look at the totality of the circumstances of the transfers at the time the transfers were made, which might include:

1.    the "fair market value" of the benefit received by ClassicStar in exchange for the transfers;

2.      the existence of an arm's length relationship between ClassicStar and the person or entity that received or benefitted from the transfers;

3.      the good faith of the parties; and

4.      the difference between the amount transferred by ClassicStar and the fair market value of what was received by ClassicStar in exchange.

If you decide that Trustee has proven these elements, the Trustee does not have to prove that ClassicStar intended to defraud creditors when it made the transfers and you must find for the Trustee on this claim.

Authority:  11 U.S.C. § 548; *In re Wilkinson*, 196 Fed.Appx. 337 (6th Cir. 2006); *In re Stinson*, 364 B.R. 278 (Bkrtcy.W.D.Ky. 2007); *In re Smith*, 24 B.R. 19 (Bkrtcy.N.C. 1982); *In re Commercial Financial Services, Inc.*, 350 B.R. 559, 576-79 (Bkrtcy.N.D.Okla. 2005).

36.    THE TRUSTEE MAY RECOVER FRAUDULENT TRANSFERS FROM (I) ANY DEFENDANT THAT WAS THE INITIAL PERSON OR ENTITY THAT RECEIVED THE TRANSER, OR (II) FROM A DEFENDANT WHO SUBSEQUENTLY RECEIVED THE TRANSFER, OR (III) FROM A DEFENDANT WHO BENEFITTED FROM THE TRANSFER BUT WHO DID NOT RECEIVE THE TRANSFER DIRECTLY

In order for the Trustee to recover from a Defendant, the Defendant does not have to be the person or entity to which the transfers of ClassicStar's cash were made or first made.  The Trustee can recover a transfer that has been "avoided" (meaning that the Court has ordered it to be returned to the Trustee as the representative of the ClassicStar estate) from either:

1.      A person or entity to whom the transfers were first made (called the "initial transferee"); or

2.      A person or entity who benefitted from the transfers, either directly or indirectly, even if the person or entity did not receive the money from ClassicStar; or

39

3.      A person or entity who received the transfers after they were first received by the initial transferee (called a "subsequent transferee").

For example, if ClassicStar made a transfer to Geostar and there is another Defendant who was an owner, officer, employee or affiliate of Geostar and therefore benefitted indirectly from the transfers to Geostar, then the Trustee can recover the transferred cash either from Geostar or from the Defendants who benefitted or in some combination.  In addition, the Trustee does not need to recover the transferred cash from the initial transferee.  Rather, he can also recover (or recover in the alternative) from any subsequent transferee, i.e., from any Defendant that wound up with some or all of the transferred cash.  For example, if the Defendants transferred some of ClassicStar's cash to Geostar (the initial transferee in this example) and then Geostar subsequently transferred all or part of that cash to Defendant, First Source Wyoming, Inc. (the subsequent transferee in this example), then the Trustee can recover the transferred cash from Geostar and/or from First Source Wyoming, Inc. or in some combination.

Authority:  11 U.S.C. § U.S.C. § 550(a); *O'Bryan v. Sutton,* 102 Ky. 334 (1897);  *In re Fabrikant & Sons, Inc.*, 394 B.R. 721 (Bankr. S.D.N.Y. 2008); *Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 735 (9th Cir. BAP 2008)("[W]e hold that a trustee is not required to avoid the initial transfer from the initial transferee before seeking recovery from subsequent transferees under § 550(a)(2)."); *In re International Administrative Services, Inc.*, 408 F.3d 689, 706 (11th Cir. 2005); *Imperial Corp. of America v. Shields*, 1997 WL 808628, *4-5 (S.D.Cal. 1997); *Official Comm. of Unsecured Creditors v. Foss (In re Felt Mfg. Co., Inc.)*, 371 B.R. 589, 638 (Bankr.D.N.H.2007) (under section 550, it is "sufficient if the complaint asserts that there are avoidable transfers under state or federal law...."); *Leonard v. Optimal Payments Ltd. (In re Nat'l Audit Def. Network)*, 332 B.R. 896, 915 (Bankr.D.Nev. 2005); *Crafts*

40

*Plus+, Inc. v. Foothill Capital Corp. (In re Crafts Plus+, Inc.)*, 220 B.R. 331, 338 (Bankr.W.D.Tex. 1998); *In re Richmond Produce Co., Inc. v. Sorani*, 195 B.R. 455, 469 (N.D. Cal. 1996).

37.    CONVERSION

The Trustee seeks to recover damages from the Defendants for the alleged conversion of ClassicStar's property.  Conversion is when a person or entity, without authorization, acts or exerts control or ownership over property that belongs to someone else.  Conversion occurs when the act of control or exertion is inconsistent with the property rights of the owner, in other words, that the owner was denied its right to control the property.

To establish the Defendants' liability for conversion, the Trustee must prove four essential elements by a preponderance of the evidence:

1.    ClassicStar was the owner of the property;

2.    The Defendants took control of ClassicStar's property;

3.    ClassicStar was deprived of the property;

4.    The Defendants did not have authorization to control the property - in other words, the Defendants did not have permission or other authority to control the property; and

5.    The Defendants' conduct caused harm to ClassicStar.

An owner of property can be someone who has full, legal title, but also includes someone who may not have legal title but who has the right to immediate possession and control of the property.  Property means real property and personal property.  It is, therefore, not limited to land, but also includes cash and other things of value.

In this case, the Trustee claims that Defendants took most of ClassicStar's cash for their own use.  If you find that the Trustee has proved that the Defendants converted all or some of

41

ClassicStar's property, you must return a verdict for the Trustee and decide what damages to award ClassicStar for that claim.

Authority:  *Elam & Miller, PSC v. National City Bank of Kentucky*, 2007 U.S. Dist. LEXIS 67604, at *13 (E.D. Ky. Sept. 12, 2007) (quoting *Davis v. Siemens Medical Solutions USA, Inc.,* 399 F. Supp. 2d 785, 801 (W.D. Ky. 2005) (citing, *inter alia*, *Goss v. Bisset,* 411 S.W.2d 50, 53 (Ky. 1967)); *Anderson v. Pine South Capital, LLC*, 177 F. Supp. 2d 591, 603 (W.D. Ky. 2001); *Vulcan Coals, Inc. v. Howard*, 946 F.2d 1226, 1228, n.1 (6th Cir. 1991).

38.    UNJUST ENRICHMENT

The Trustee is also asserting a claim for unjust enrichment.  Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or other property of another against the fundamental principles of justice or equity and good conscience.  The Trustee asserts that the Defendants unlawfully used the cash diverted from ClassicStar and, therefore, ClassicStar did not have access to these funds.

To find unjust enrichment, you must find that the Trustee has proven that:

1.    The Defendants were enriched by the retention of cash they diverted or misappropriated from ClassicStar;

2.    ClassicStar and its estate was disadvantaged or impoverished by Defendants' deprivation of ClassicStar's cash;

3.    A relation between the enrichment and impoverishment, meaning that the benefit to the Defendants was a result of the deprivation of ClassicStar; and

4.    There is no justification for the deprivation, or in other words, that it was inequitable to retain the benefit without payment for its value.

42

If you find that the Trustee has established by a preponderance of the evidence all of the elements of the claim of unjust enrichment, you must return a verdict for the Trustee.

If so, then you have determined that the Defendants secured a benefit and that it would be unconscionable or inequitable to allow them to retain that benefit.  You then must consider what damages to award the Trustee.

Authority:  *Stonestreet Farm, LLC v. Buckram Oak Holdings, N.V.*, 2007 U.S. Dist. LEXIS 31313, at *15-16 (E.D. Ky. Apr. 16, 2007) (citing *Guarantee Electric v. Big Rivers Electric Corp.*, 669 F. Supp. 1371, 1381 (W.D. Ky. 1987); *Tractor and Farm Supply, Inc. v. Ford New Holland, Inc.*, 898 F. Supp. 1198, 1206 (W.D. Ky. 1995)).

39.     UNLAWFUL DISTRIBUTIONS – KRS §§ 275.225 ET. SEQ.

The Trustee also seeks to recover damages from the Defendants for making unlawful cash distributions of ClassicStar's money.  A distribution occurs when a limited liability company such as ClassicStar distributes cash or other property to its members (who are its owners).

Not all distributions are unlawful.  To prove that distributions are unlawful, the Trustee must prove, by a preponderance of the evidence, that:

1.     ClassicStar made distributions; and

2.     Because of the distributions, ClassicStar's assets were less than the sum of its liabilities or that because of the distributions ClassicStar and insufficient capital to operate or was unable to pay its debts as they came due.

If the Trustee has proven these two elements, then you must return a verdict for the Trustee and determine the amount of damages.

43

The Trustee also claims that the individual Defendants are personally liable for the unlawful distributions.  To be personally liable, the Trustee must prove:

1.      There were unlawful distributions;

2.      The named Defendants were managers or members of ClassicStar;

3.      The named Defendants voted for the unlawful distribution.

If the Trustee has proven these elements, then you must return a verdict for the Trustee.

<u>Authority</u>: KRS §§ 275.225, 275.230, 275.170.

40.     UTAH CODE ANNOTATED §§ 76-10-1601 ET. SEQ.

The Trustee next asserts that the Defendants are liable for an alleged pattern of unlawful activity.  A pattern of unlawful activity means "engaging in conduct which constitutes the commission of at least three episodes of unlawful activity, which episodes are not isolated, but have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics. Taken together, the episodes shall demonstrate continuing unlawful conduct."

Unlawful activity means that a person either acted or solicited, requested, commanded, encouraged, or intentionally aided another person to engage in conduct that is considered an offense.

To prove a claim of a pattern of unlawful activity, the Trustee must prove the following elements:

1.      The existence of an enterprise, which could be an individual, group of people, corporation, or other entity.  In this case, the Trustee has alleged that ClassicStar was the enterprise; and

44

2.     A pattern of unlawful activity, which requires at least three episodes of unlawful conduct.  In this case, the Trustee has alleged the following episodes of unlawful activities by the Defendants that were repeated over a number of years (July 1, 2001 – September 14, 2007):

(i)     Designing and implementing the mare lease program (primarily Defendants, David Plummer, Spencer Plummer, Tony P. Ferguson, Thomas E. Robinson, John W. Parrott and Frederick J. Lambert) to attract cash primarily to direct to the Defendants' separate gas development project to enrich themselves, not to conduct a viable thoroughbred horse breeding business at ClassicStar;

(ii)    Transferring ClassicStar's funds to Defendant National Equine Lending Co., L.C. ("NELC") and back to ClassicStar to engage in circular loan transactions knowing that NELC had no ability to fund those loans;

(iii)   Misappropriating $215 million of ClassicStar's cash from mare lease sales for their own purposes, including, various gas development projects and investments when they had no authority to use ClassicStar's cash for those purposes, through repeated transfers of ClassicStar's cash and using ClassicStar's cash for expenses unrelated to ClassicStar's horse breeding business;

(iv)    Taking elaborate steps to perpetuate and conceal their misappropriation of ClassicStar's cash through the use of

45

non-existent, "place holder" performance horses for the mare leases, purporting to give mare lease participants oil and gas working interests through "exchanges" or "trade outs" of various kinds, including with respect to FEEP, when those oil and gas interests were not created or funded and had no economic substance, and showing false "accrued expenses" on ClassicStar's books for horse-related expenses that were never incurred;

(v)     Transferring cash diverted from ClassicStar to Geostar and its affiliates, notably to Gastar, through payment of Gastar's gas development expenses and through the so-called Convertible Debenture with Gastar through which Geostar obtained shares of Gastar stock for itself and its insiders; and

(vi)     Actions taken to "cash out" of their ill-gotten gains obtained with cash diverted from ClassicStar, such as Geostar's sale of certain of its gas properties to Gastar in June 2005 for $62.5 million and its sale of more of its gas properties to Gastar in June 2008 for $25.7 million.

3.     ClassicStar was damaged by a Defendant's or the Defendants' conduct.

In making your determination, you are not limited to the six examples of unlawful conduct listed above.

46

If you find that the Trustee has proven the above elements, then you must find that the Defendants are liable and you must also determine the amount of damages.  If you so decide for the Trustee, the Trustee is entitled to recover twice the damages that ClassicStar sustained, plus the attorneys fees incurred by the Trustee in bringing this lawsuit.

<u>Authority</u>:  Utah Code Annotated §76-10-1601, et. seq.; *Alta Industries Ltd. v. Hurst*, 846 P.2d 1282 (Utah 1993); *Hill v. Estate of Allre*d, 216 P.3d 929 (Utah 2009).

41.    BREACH OF CONTRACT - HORSES

A contract is a legally binding agreement between two or more parties.  Each party to the contract must perform according to the agreement's terms.  A party's failure to perform a contractual duty constitutes breach of contract.  If a party breaches the contract and that breach causes injury or loss to another party, then the injured party may claim damages.

For a legally binding contract to exist, there must be:

1.    an offer of a contract by one party;

2.    an acceptance of that offer by the other party;

3.    consideration or value for the offer and acceptance; and,

4.    sufficiently specific terms that determine the obligations of each party.

To recover damages from the Defendants' for breach of contract, the Trustee must prove all of the following, by a preponderance of the evidence, that:

1.    ClassicStar and a Defendant or Defendants entered into a contract;

2.    A Defendant or Defendants failed to do something that the contract required them to do; and,

3.    ClassicStar was harmed or sustained damages by that failure to perform.

47

Here, the Trustee asserts that the Defendants (specifically, Buffalo Ranch and Geostar Corporation), breached their contract with ClassicStar by failing to provide ClassicStar with sufficient thoroughbred horses or the means to acquire sufficient thoroughbred horses, or performance horses, to meet ClassicStar's mare lease obligations. The Trustee claims that the resulting damages were that the mare leases were not performed and as a result the mare lease participants have filed proofs of claim in the bankruptcy case against ClassicStar. If you find for the Trustee, you must then determine the amount of damages.

Authority: *Lowther v. Potter*, 197 F. 196, 200 (D. Ky. 1912); *Caldwell v. E. F. Spears & Sons*, 186 Ky. 64, 69 (Ky. 1919).

42.    BREACH OF CONTRACT – OIL AND GAS INTERESTS

The Trustee contends that ClassicStar was a third-party beneficiary of certain contracts between the Defendants (notably, Defendant, First Source Wyoming, Inc. ("FSW"), a wholly-owned subsidiary of Defendant, Geostar Corporation) and mare lease participants whereby the Defendants (notably FSW) promised to provide the mare lease participants with working interests in gas wells and/or with Gastar public stock as a replacement for their mare leases. If the Defendants had performed these obligations, ClassicStar's obligations under the mare leases would have been reduced, thereby benefitting ClassicStar.

A third-party beneficiary is an entity that is entitled to certain benefits from a contract between other parties, even though the third-party beneficiary was not a party to and did not sign the contract. The rights of the third-party claiming beneficiary status must be measured by the terms of the contract between the other contracting parties. To be a third-party beneficiary to the contracts between the Defendants (notably FSW) and the mare lease participants, the Trustee must show that the contract was made and entered into directly or primarily for the benefit of the

48

third person, here ClassicStar.  This intent may be contained in the contract itself or may be inferred from the actions of the parties and the circumstances.  However, just because a third party is affected or benefits incidentally from the contract or the contracting parties' conduct under the contract, does not mean that the third party is automatically a beneficiary to the contract.  If you find that the Trustee has proven that ClassicStar was a third-party beneficiary to the contract, then you must also determine if the Defendants (notably FSW) breached the contract.

In addition to proving that ClassicStar was a third party beneficiary, for the Trustee to prevail on this claim, the Trustee must also prove, by a preponderance of the evidence that:

1.     The mare lease participants and Defendants (specifically, First Source Wyoming, Inc.) entered into a contract;

2.     Defendants (specifically, First Source Wyoming, Inc.) failed to do something that the contract required it to do; and,

3.     ClassicStar was harmed or otherwise incurred damages resulting from the failure to perform.

If you find that the Trustee has proven these elements as well as proven that ClassicStar was a third-party beneficiary, you must find for the Trustee on this claim.  You must then determine what damages to award the Trustee.

Authority:  *Lowther v. Potter*, 197 F. 196, 200 (D. Ky. 1912); *Caldwell v. E. F. Spears & Sons*, 186 Ky. 64, 69 (Ky. 1919); *Young v. Kenneth Jackson Elec., Inc.*, 2006 WL 2787077, at *2-3 (Ky.App. 2006) (outlining third party beneficiary).

49

43.    CIVIL CONSPIRACY

The Trustee also alleges that the Defendants engaged in a civil conspiracy.  A civil conspiracy is a combination of two or more persons or entities who agree to act together to do an unlawful act or to do a lawful act by unlawful means. To find for the Trustee here, you must find that the Trustee proved that there was an agreement, between two or more people and/or entities to cause injury to ClassicStar by unlawful action.   The agreement does not need to be express, meaning that the parties involved do not have to specifically state that it is an agreement.  The agreement can be made orally, in writing or may be implied by the conduct of the parties and the surrounding circumstances.  All that needs to be proven was that there was a plan and the conspirators shared in the objective of that plan.

The Trustee alleges that the unlawful acts by the Defendants include the misappropriation of ClassicStar's cash and the Defendants' repeated acts to conceal and perpetuate those misappropriations.  In order to find for the Trustee, you must find that Defendants participated in at least one of these unlawful acts.

Authority:  *Kendrick v. Standard Fire Ins. Co*., 2007 U.S. Dist. LEXIS 28461, at *55 (E.D. Ky. March 31, 2007) (quoting *Smith v. Board of Ed. of Ludlow, Ky.,* 94 S.W.2d 321, 325 (Ky. 1936)).  *Montgomery v. Milam*, 910 S.W.2d 237, 239 (Ky. 1995); *James v. Wilson*, 95 S.W.3d 875, 912-13 (Ky. Ct. App. 2002).

44.    ALTER EGO LIABILITY

The law permits, even encourages, the formation of corporations and other legal entities as a means of attracting investors who can invest their money in the corporate or other legal enterprise without risking individual liability for corporate acts and transactions.  In return, society gets the benefit of the commercial activity generated by the business of the corporation.

In most cases, therefore, the status of a corporation as a separate legal entity apart from its owners or stockholders should be respected and preserved.

In this case, the Trustee claims that the corporate Defendants were mere instruments or tools – what the law calls alter egos – of the individual human Defendants, so that the separate independent status of the corporate Defendants from the individual human Defendants should be disregarded and all the individual human Defendants should be held legally responsible for the acts of the corporate Defendants and all the corporate Defendants should be held legally responsible for the acts of the individual human Defendants.  The theory of alter ego is a doctrine that disregards the limited personal liability of acts taken by a legal entity because there is no separate identity of the individual and the legal entity.  If an individual human has not operated the business as a separate entity, the individual will be held personally liable for the acts of the business and vice versa.

To prove the alter ego theory, the following must be established:

1.      That the corporation is not only influenced by the owners, but also that there is such unity of ownership and interest that their separateness has ceased; and

2.      That the facts are such that treatment of the corporation as a separate entity, of separate corporate existence, would have the effect of sanctioning a fraud or promoting injustice.

Some factors to consider in determining whether the corporate Defendants in this case should be treated as the alter ego of the individual human Defendants, are:

1.      The purpose for which the corporate Defendants were formed or acquired by the owners;

2.      Whether the Defendants failed to observe the formalities of corporate existence;

51

3.      Whether the corporate Defendants' books and records were kept, regular meetings of the board of directors were conducted, and whether other corporate legal formalities were observed;

4.      Whether the funds of the corporate Defendants were commingled with those of the individual Defendants;

5.      Whether the corporate Defendants were undercapitalized;

6.      Whether the individual Defendants used the corporate Defendants' accounts or assets for personal loans or other personal purposes;

7.      Whether the individual Defendants used the corporate Defendants' assets or manipulated those assets for illegal transactions;

8.      The activity or inactivity of others as officers and/or directors in the business affairs of the corporate Defendants; and

9.      Any other factors disclosed by the evidence and tending to show that the corporate Defendants were operated as entities separate and apart from their owners.

If you conclude that the Trustee has shown, based on one or more factors, that the corporate entity Defendants were the alter egos of the individual human Defendants, then you must find for the Trustee on this claim.

Authority:  *Inter-Tel, Inc. v. Linn Station Props., LLC,* 2009 Ky. App. LEXIS 238, at *7-10 (Ky. Ct. App. Nov. 20, 2009); *Hodak v. Madison Capital Mgmt.*, 2007 U.S. Dist. LEXIS 35248 (E.D. Ky. May 14, 2007) (allowing discovery on veil piercing claims to go forward) (quoting *White v. Winchester Land Devel. Corp.*, 584 S.W.2d 56, 62 (Ky. Ct. App. 1979)); *Brennan v. Slone (In re Fisher)*, 296 Fed. Appx. 494, 506 (6th Cir. 2008) (affirming alter ego liability in adversary proceeding brought by bankruptcy trustee) (citations omitted)).

52

45.     DAMAGES

If the Trustee has proven by a preponderance of the evidence that the Defendants or any one of the Defendants are liable on the Trustee's claims, then you must determine the damages to which the Trustee is entitled.

A.     Damages For Breach of Fiduciary Duty, Fraudulent Transfers, Conversion, Unjust Enrichment, Unlawful Distributions, Violations of Utah Pattern of Unlawful Activities Statute

The Trustee has presented evidence that between July 1, 2001 and the date ClassicStar filed for bankruptcy on September 14, 2007, the Defendants unlawfully transferred or caused to be transferred, $185 million of cash from ClassicStar to Defendant, Geostar Corporation and to or for the benefit of the other Defendants, as well as to Gastar Exploration, Ltd. (which is no longer a Defendant in this case), for which no fair consideration or reasonably equivalent value was received by ClassicStar.  The Trustee has also presented evidence that the Defendants used or caused to be used, an additional $30 million of ClassicStar's cash to pay for expenses that were not associated with ClassicStar's horse breeding business, for a total amount of cash improperly transferred of $215 million.  The Trustee has presented further evidence that these cash transfers and certain other activities of the Defendants rendered ClassicStar insolvent, with liabilities exceeding its assets and insufficient capital or cash to pay its obligations, between July 1, 2001 and September 14, 2007, when ClassicStar filed for bankruptcy.  The Trustee has also presented evidence that a reasonable rate of return on this transferred money leads to a total amount of damages of $295,744,331.  If you find the Trustee's evidence credible on the issue of damages, then you should award the Trustee, on behalf of the ClassicStar estate, up to $295,744,331.

If you agree that the Trustee has proven his claim against the Defendants under the Utah Pattern of Unlawful Activities Statute, then you may award the Trustee double this amount or

53

$591,488,662, plus the attorney's fees he has incurred in bringing this lawsuit.  If you award attorneys' fees, the Trustee's attorneys will submit their fees to the Judge who will decide what amount is fair and reasonable.

     <u>Authority</u>:  4-77 Modern Federal Jury Instructions-Civil P 77.01.

     B.     Damages for Breach of Contract

If you should determine that the Trustee is entitled to a verdict on his breach of contract claims, the law provides that the Trustee, on behalf of the estate of ClassicStar, is to be reasonably compensated for any damages sustained by ClassicStar for losses as may fairly be considered to have arisen naturally from the Defendants' breach of contract.  Compensatory damages, most often the measure of damages in breach of contract actions, are intended to put the injured party, here ClassicStar, in as good a position as the party would have been in if performance had been rendered as promised.  What that position is depends upon what the parties reasonably expected.

The Trustee is not required to prove the connection between the Defendants' conduct and ClassicStar's damages by direct, indisputable evidence.  Rather, you may draw reasonable or logical inferences from the evidence adduced that the conduct of the Defendants caused ClassicStar to suffer the harm and damages to which the Trustee claims it is entitled.

Compensatory damages for breach of contract are designed to place ClassicStar in as good a monetary position as it would have enjoyed if the contract had been performed as promised.  As I previously stated, the Trustee has presented evidence showing that the Defendants misappropriated $215 million of ClassicStar's cash between July 1, 2001 and September 14, 2001 and that applying a reasonable rate of return to this amount, results in damages to ClassicStar of $295,744,331.  If you find that the Defendants breached a contract or

54

contracts with ClassicStar and that awarding the Trustee $295,744,331 would put ClassicStar in as good a position as it would have enjoyed if the contract had been performed, then you may award the Trustee $295,744,331.

Authority:  *Aetna Cas. & Sur. Co. v. Com.*, 179 S.W.3d 830, 859 (Ky. 2005) (citing *Perkins Motors, Inc. v. Autotruck Fed. Credit Union*, 607 S.W.2d 429, 429-30 (Ky.App.1980) and *State Prop. and Bldgs Comm'n of Dep't of Fin. v. H.W. Miller Constr. Co.*, 385 S.W.2d 211, 214 (Ky.1964)).

46.   THE TRUSTEE MAY RECOVER ALL OF CLASSICSTAR'S DAMAGES FROM ALL OR ANY ONE OF THE DEFENDANTS

The Trustee has presented evidence that the Defendants conspired and aided and abetted one another in the wrongful acts alleged.  If you find that the Trustee has presented sufficient evidence of such conspiracy and/or aiding and abetting, then you should find that the Trustee may recover all damages suffered by ClassicStar from all of the Defendants or from any one of the Defendants.

Authority:  See above regarding conspiracy, aiding and abetting.

47.   EQUITABLE SUBORDINATION AND DISSALLOWANCE OF CLAIMS – 11 U.S.C. §§ 502, 510(C)

Equitable subordination is the equitable principle that has the effect of subordinating a claim asserted by a creditor in a bankruptcy case, or in other words, placing that claim in a lower order of priority in a bankruptcy case, because the creditor has an unfair advantage over other creditors due to improper conduct or an advantageous position.  Here, the Trustee seeks to subordinate to the lowest possible level of priority, all proofs of claim filed in ClassicStar's Chapter 7 case by Defendants, David Plummer, Spencer Plummer, Strategic Opportunity Solutions LLC (also known as Buffalo Ranch), Jennifer Stahle, Geostar Corporation, National

55

Equine Lending Co., L.C. (also known as NELC) and the Private Consulting Group, Inc. (also known as PCG).

To prevail on a claim for equitable subordination, the Trustee must prove:

1.      Defendants have filed a proof of claim in the ClassicStar bankruptcy case;

2.      Defendants engaged in inequitable or improper conduct; and,

3.      The misconduct resulted in injury to the estate of ClassicStar or conferred an unfair advantage on the Defendants.

You may also decide that the proofs of claim the Defendants filed in ClassicStar's chapter 7 case should be disallowed in full and that the Defendants should take nothing from ClassicStar's estate.

<u>Authority</u>:  11 U.S.C. § 510(c); *In re AutoStyle Plastics, Inc.*, 269 F.3d 726 (6th Cir. 2001); *In re Enron Corp.*, 333 B.R. 205, 217 (Bkrtcy.S.D.N.Y. 2005); *Benjamin v. Diamond ( In re Mobile Steel Co.)*, 563 F.2d 692, 700 (5th Cir.1977); *Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 323 F.3d 228, 233 (3rd Cir. 2003); 11 U.S.C. § 502.

130771.00601/21979701v.1

Respectfully submitted,

JAMES D. LYON, ESQUIRE
CHAPTER 7 TRUSTEE


Dated:  March 17, 2011                    By: /s/ *Earl M. Forte*
                                          One of his attorneys
                                          Earl M. Forte
                                          Norman E. Greenspan
                                          Alisa E. Moen
                                          Jonathan S. Goldman
                                          Blank Rome LLP
                                          130 N. 18th Street
                                          One Logan Square
                                          Philadelphia, PA 19103
                                          Tel:  (215) 569-5618
                                          Fax:  (215) 832-5618
                                          Email:  forte@blankrome.com


Dated:  March 17, 2011                    By:/s/ *John O. Morgan, Jr.*
                                          One of his attorneys
                                          John O. Morgan, Jr.
                                          Wes Harned
                                          Attorney at Law
                                          393 Plainview Road
                                          P.O. Box 25667
                                          Lexington, KY 40507
                                          Tel:  (859) 253-6500
                                          Fax:  (859) 253-6502
                                          Email:  court@johnmorganjr.com

57

130771.00601/21979701v.1

<u>CERTIFICATE OF SERVICE</u>

I, Earl M. Forte, hereby certify that on March 17, 2011 a true and correct copy of the

attached Trustee's Proposed Jury Instructions, was electronically filed by using the CM/ECF

system, which will send a notice of electronic filing to the following:

| | |
|---|---|
| Simona Alessandra Agnolucci<br>sagnolucci@howardrice.com | Benjamin Samuel Klehr<br>bklehr@cozen.com |
| | |
| Jason Trent Ams<br>jta@gdm.com | Matthew R. Lindblom<br>Matthew.Lindblom@skofirm.com |
| | |
| Timothy S. Arnold<br>timarn@bkf-law.com | Kara Read Marino<br>kmarino@hwgsg.com |
| | |
| Jennifer Cave Artiss<br>jca2@gdm.com | Romaine C. Marshall<br>rcmarshall@hollandhart.com |
| | |
| Mark Bradley Blackburn<br>mblackburn@erskine-blackburn.com | Steven M. McCauley<br>smccauley@mis.net |
| | |
| Jayson E. Blake<br>jeb@millerlawpc.com | Charles C. Mihalek<br>cmihalek@mis.net |
| | |
| David Z. Chesnoff<br>dzchesnoff@cslawoffice.net | John O'Neill Morgan, Jr.<br>court@johnomorganjr.com |
| | |
| Neal D. Colton<br>ncolton@cozen.com | Marc L. Newman<br>mln@millerlawpc.com |
| | |
| Emily H. Cowles<br>ehc@morganandpottinger.com | Elizabeth E. Nicholas<br>eenicholas@jacksonkelly.com |
| | |
| Jason W. Crowell<br>jwcrowell@stoel.com | Medrith Lee Norman<br>mnorman@fbtlaw.com |
| | |
| Stephen J. Defeo<br>sdefeo@brownconnery.com | Kenneth Bradley Oakley<br>kboakley@jacksonkelly.com |
| | |
| Nathan Ray Denney<br>ndenney@cnmlaw.com | Pamela Dae Perlman<br>pdperlman@hotmail.com |

58

| | |
|---|---|
| Phillip B. Dye, Jr. | Jason M. Powers |
| pdye@velaw.com | jpowers@velaw.com |
| | |
| Blake C. Erskine, Jr. | C. Randall Raine |
| berskine@erskine-blackburn.com | crr@hwgsg.com |
| | |
| Steven C. Forman | Elizabeth Juliana Rest |
| scformanlaw@comcast.net | elizabeth.rest@idellseitel.com |
| | |
| B. David Foster | Catherine L. Sakach |
| dfoster@lockelord.com | csakach@duanemorris.com |
| | |
| Eric D. Freed | Ory Sandel |
| efreed@cozen.com | Ory.sandel@idellseitel.com |
| | |
| Joseph M. Garemore | Richard A. Schonfeld |
| jgaremore@brownconnery.com | rreyes@cslawoffice.net |
| | |
| Michael Joseph Gartland | David W. Scofield |
| mgartland@wisedel.com | dws@psplawyers.com |
| | |
| James Douglas Gilson | Gilbert Ross Serota |
| jgilson@cnmlaw.com | gserota@howardrice.com |
| | |
| Lea Pauley Goff | J. Ronald Sim |
| Lea.Goff@skofirm.com | jrsim@stoel.com |
| | |
| Ronald L. Green | Jeffrey Alan Springer |
| rgreen@bsglex.com | jspringer@springer-and-steinberg.com |
| | |
| Culver V. Halliday | Matthew A. Stinnett |
| Culver.Halliday@skofirm.com | Mas2@gdm.com |
| | |
| John W. Hays | Paul E. Sullivan |
| jwhays@jacksonkelly.com | psullivan@fbtlaw.com |
| | |
| Robin Luce Herrmann | David P. Thatcher |
| luce-herrmann@butzel.com | David.thatcher@ogletreedeakins.com |
| | |
| Gloria S. Hong | James D. Thompson, III |
| gshong@stoel.com | jthompson@velaw.com |

59

| | |
|---|---|
| Barry D. Hunter | Kyle C. Thompson |
| bhunter@fbtlaw.com | kthompson@bermansavage.com |
| | |
| Richard J. Idell | Amanda Lee Tomlin |
| richard.idell@idellseitel.com | atomlin@bsglex.com |
| | |
| John G. Irvin, Jr. | Ahndrea R. Van Den Elzen |
| jirvin@ksattorneys.com | arv@pjmlaw.com |
| | |
| Brent E. Johnson | Mary Jane E. Wagg |
| bjohnson@hollandhart.com | mwagg@vancott.com |
| | |
| Brian M. Johnson | Robert C. Webb |
| bmj@gdm.com | bwebb@fbtlaw.com |
| | |
| Terry E. Johnson | Mickey T. Webster |
| tjohnson@pjmlaw.com | mwebster@wyattfirm.com |
| | |
| Jeremy T. Kamras | T. Scott White |
| jkamras@howardrice.com | tsw@morganandpottinger.com |
| | |
| Ellen Arvin Kennedy | |
| federaldistricteky@fowlerlaw.com | |
| | |

Dated: March 17, 2011                          *Earl M. Forte*
                                               Earl M. Forte

60