UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

FILED ELECTRONICALLY

| | |
|---|---|
| IN RE CLASSICSTAR MARE LEASE LITIGATION ) ) ) | MDL No. 1877 |
| ) AND ) ) | Master File: Civil Action No.: 5:07-cv-353-JMH |
| WEST HILLS FARMS, LLC, ET AL. ) ) PLAINTIFFS ) | |
| V. ) ) | CASE NO.: 06-243-JMH |
| CLASSICSTAR, LLC, ET AL. ) ) DEFENDANTS ) | |

## WEST HILLS' SUR-REPLY TO OBJECTIONS BY GEOSTAR CORPORATION, ET AL.

The West Hills Plaintiffs submit this Sur-Reply to Defendants' Reply in Support of Objections to Plaintiffs' Request for Damages [D.E. 2293]:

### INTRODUCTION

In their Reply, the Defendants attempt to reopen a number of issues resolved by the Court's decision to grant the Plaintiffs' Motion for Summary Judgment in its entirety. In that Motion, Plaintiffs specified precisely the rescissionary damages that they sought and explained the basis upon which their expert, George Keeney, had calculated those damages. The Court accepted these calculations, permitting supplementation by the Plaintiffs for the limited purposes of allowing them to drop their far higher benefit of the bargain damages claims, reducing their out of pocket claims by the amounts recovered since filing the summary judgment motion, and

calculating prejudgment interest. Defendants have construed this as an invitation to argue for a rehearing on the amount of damages, raising issues not contained in Plaintiffs' Notice Supplementing Amount of Plaintiffs' Damages or in their Reply to Defendants' Objections to Plaintiffs' Notice [D.E. 2267 and 2271,] and issues which in no way justify a reduction of the damages already awarded by the Court.

## ARGUMENT

A. <u>Plaintiffs Have Been Awarded the Proper Measure of Compensatory Damages</u>.

As the Court found in granting Plaintiffs' Motion for Summary Judgment, Defendants obtained Plaintiffs' participation in the Mare Lease Program through a series of omissions and misrepresentations that included everything from the assignment of phantom horses, to the overvaluing of the horses that did exist, to the bribing of Plaintiffs' attorneys, to the falsification of information which Defendants knew participants would provide to the IRS. No matter how many times Defendants say otherwise, Plaintiffs obviously did not assume any risks associated with the fraudulent nature of the Program. In fact, Plaintiffs would not have participated – and would not have suffered any losses – but for Defendants' lies. Under these circumstances, the out of pocket damages sought by Plaintiffs indisputably represented a proper measure of their loss. *See Fleishhauer v. Feltner*, 879 F.2d 1290, 1300 (6th Cir. 1989) (awarding plaintiffs amount actually invested in fraudulent scheme, and identifying that as proper measure of damage to plaintiff's business or property under the circumstances); *Waters v. Int'l Precious Metals Corp.*, 172 F.R.D. 479, 506 (S.D. Fla. 1996) ("With respect to the calculation of damages proximately caused by the RICO violations…based on Plaintiffs' theory that they would not have invested but for the Alleged Scheme, the appropriate measure is the total amount of Plaintiffs' out of pocket capital invested which they would not have invested but for the Alleged

2

Scheme."); *Terrell v. Childers*, No. 93-C-2460, 1993 WL 433687, at *5 (N.D. Ill. Oct. 21, 1993) ("Finally, damages in a RICO action can also be measured by the amount invested as a result of defendants' fraud.")

Mr. Keeney's expert report, attached as Exhibit 22 to Plaintiffs' Motion for Summary Judgment and Exhibit A to this Sur-Reply, makes it plain that Plaintiffs do not overreach by choosing this methodology. Keeney calculated damages in several ways, including an out of pocket computation and an alternative benefit of the bargain analysis. *Id.,* pp. 24-26.[1] For each Plaintiff, the benefit of the bargain calculation far exceeded the out of pocket damages which the Plaintiffs actually claimed. For instance, while Nelson Breeders' rescissionary damages, awarded by the summary judgment, totaled $2,839,000, the benefit of the bargain calculation would have given Nelson Breeders $27,424,000. Similarly, the alternative benefit of the bargain calculations relating to FEEP and GFSC, which MacDonald and the Grovers gave up as part of their efforts to obtain a final judgment, would have yielded them, exclusive of prejudgment interest, $14,004,828 and $11,011,707, instead of $8,479,000 and $5,146,000, respectively. Thus, damages which do no more than return the Plaintiffs the amounts that they would not have invested but for the Defendants' fraud and compensate them for the loss of use of these sums neither overcompensate Plaintiffs nor impose any undue liability on Defendants.

While Defendants now argue for a different measure of damages, which they present through alternative damages calculations made by their lawyers rather than by their expert[2], they

---

[1] Under the similar state claim for fraud, Kentucky law recognizes both rescission and benefit of the bargain damages as appropriate. *See Patel v. Patel*, 706 S.W.2d 3, 5 (Ky. App. 1986).

[2] While it is difficult to understand how Defendants made their calculations, or why Defendants failed to count the full amount of Plaintiffs' cash investments, or how Defendants could compute prejudgment interest at less than $50,000 on principal investment balances which range from three to eleven million dollars and which have been outstanding for over seven years, it is abundantly clear that Defendants' calculation is in no way based on the out of pocket measure of damages sought by Plaintiffs in their Summary Judgment Motion and approved by this Court in granting that Motion.

made no effort to contest Plaintiffs' damages calculations in their Response to Plaintiffs' Motion for Summary Judgment. In that Motion, Plaintiffs specifically requested their out of pocket losses and attached the Keeney report which not only quantified those amounts but also detailed the exact methodology which Keeney used to reach his total. [D.E. 1698, Plaintiffs' Memorandum in Support of their Motion for Summary Judgment, pp. 49, 71, 87 and Exhibit 22.] Defendants took issue with neither, not even mentioning damages anywhere in their Response. They have no basis for doing so now.

Likewise, they have no basis for belatedly finding fault with Keeney's specific calculations – either his original damages calculations contained in the Report attached to Plaintiffs' Summary Judgment Motion [Exhibit A, attached] or his Supplemental Report which merely updates those calculations through trial. [Exhibit B, attached.] Contrary to Defendants' suggestion, Keeney's calculations give Defendants the full benefit of the amounts recovered by Plaintiffs, whether in connection with horses or stock or settlements from other RICO Defendants. As soon as Plaintiffs recovered these benefits, Keeney deducted their value from his total losses and calculated interest based on the reduced amount. These calculations, which award Plaintiffs prejudgment interest on their initial investment in the ClassicStar scheme minus any amounts which they managed to recover, are entirely consistent with the out of pocket measure of damages sought by Plaintiffs and approved by this Court. On the other hand, Defendants' calculations are wholly inconsistent with this out of pocket measure. Indeed, in offsetting Plaintiffs' damages by the full amount of the contractual values of the delivered horses (rather than by the actual amount that Plaintiffs' recovered from their sale of those horses),

Defendants wrongly apply a benefit of the bargain rather than an out of pocket measure to the damages.[3]

Finally, Defendants have never before argued that they should receive credit for amounts recovered from Plaintiffs' attorneys, not RICO defendants in this action, prior to the filing of the summary judgment. Keeney's report made no pretense of deducting theses amounts, Plaintiffs asked for a specific amount of damages which did not include these separate losses, and the Court granted the Motion, resolving this issue.[4]

In sum, Plaintiffs would not have given any money to Defendants but for the Defendants' fraud. Defendants' argument that Plaintiffs assumed the risk of some portion of their losses is akin to their argument that Plaintiffs bore equal responsibility for the operation of the Mare Lease scheme. The Court rejected this argument by granting the Motion for Summary Judgment. It makes no sense to revisit it now, when Plaintiffs have asked for and been granted a measure of damages which is both legally permissible and eminently reasonable.

B. <u>Plaintiffs are Entitled to Mandatory Treble Damages and Attorney Fees</u>.

Perhaps acknowledging the propriety of Plaintiffs' claims, Defendants declined the Court's direction to address treble damages and attorney fees. The language of 18 U.S.C. §1964(c) requires a successful RICO plaintiff receive both treble damages and attorney fees. *Id*.

---

[3] Defendants' counsel's damages calculations, which selectively apply a benefit of bargain measure or an out of pocket measure to different portions of the Mare Lease Contracts, manage to reduce Plaintiffs' damages to only a fraction of the amount by which Plaintiffs are actually out of pocket on their ClassicStar investment and to even a smaller fraction of what they would be entitled to if they were awarded damages based on the full benefits promised to them by Defendants. Moreover, by failing to calculate prejudgment interest on Plaintiffs' out of pocket losses, *i.e,* the amount of their investments minus any amounts recovered by them on those investments, Defendants' counsel manages to reduce the amount of the interest on each Plaintiffs' three to eleven million dollar principal investment balance, **outstanding for over 7 years**, down to less than $50,000.

[4] Plaintiffs did not offset the amount of their recovery from their attorneys because these recoveries were on claims for Plaintiffs' tax losses – which Plaintiffs did not seek from the RICO Defendants. Plaintiffs disclosed the fact of these recoveries to Defendants long before they filed their Motion for Summary Judgment. *See, e.g.,* Plaintiffs' 3/23/09 Response to Defendants' Discovery, Exhibit C, attached, and the 7/30/09 Deposition of Lynn T. MacDonald, pp. 1, 10, Exhibit D, attached.

("Any person injured in his business or property…shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."); *see also United Healthcare Corp. v. Am. Trade Ins. Co.*, 88 F.3d 563, 575 (8th Cir. 1996) ("an award of reasonable attorney's fees and costs under RICO is mandatory" and "consistent with Congress' intent in enacting the civil portion of the RICO statute 'to enlist the aid of civil claimants in deterring racketeering'"); *Stochastic Decisions, Inc. v. DiDomenico,* 995 F.2d 1158, 1167 (2d Cir. 1993) (§ 1964(c) requires that prevailing RICO plaintiff be awarded reasonable attorney's fees); *Quick v. Peoples Bank of Cullman County,* 993 F.2d 793, 799 (11th Cir. 1993) (same); and *FMC Corp. v. Varonos,* 892 F.2d 1308, 1315 (7th Cir.1990) (same); *Karl-Heinz Herborg v. Inter-Continental Brokerage Corp.*, 976 F.2d 737 (9th Cir. 1992) (unpublished) (district court's failure to award "mandatory treble damages" was clearly erroneous under § 1964(c)); *Bullock v. Abbott & Ross Credit Servs., LLC*, No. A-09-CV-413, 2009 WL 4598330, at *4 (W.D. Tex. Dec. 3, 2009) ("treble damages are mandatorily assessed upon a finding of liability under RICO); *Bath Unlimited, Inc. v. O'Dwyer*, No. 04-3919, 2007 WL 836605, at *5 (D.N.J. March 14, 2007) ("Imposition of treble damages under RICO is mandatory."); *Regency Commc'ns, Inc. v. Cleartel Commc'ns, Inc.*, 304 F. Supp. 2d 1, 12 (D.D.C. 2004) ("According to 18 U.S.C. 1964(c), having found liability against defendants…the Court must award treble damages to Plaintiffs."); *MDO Dev. Corp. v. Kelly*, 735 F. Supp. 591, 593 (S.D.N.Y. 1990) ("[D]efendants failed to submit any authority for the proposition that the statute, which states that an injured person 'shall recover threefold the damages he sustains,' did not require literal application. In fact, imposition of treble damages is required by RICO."). Defendants have not cited any authority which suggests otherwise.

      C.      <u>Plaintiffs are Entitled to Prejudgment Interest on their RICO Claims</u>.

Without question, the Court has the discretion to award prejudgment interest on a RICO claim. *See Abou-Khadra v. Mahshie*, 4 F.3d 1071, 1084 (2d Cir. 1993). Indeed, Sixth Circuit courts, including this Court, have done so on more than one occasion. *See, e.g., Empire Servs., Inc. v. Kanza*, 996 F.2d 1214, at *2 (6th Cir. 1993) (unpublished) (affirming award that included treble damages, prejudgment interest and attorney fees); *Grange Mut. Cas. Co. v. Mack*, Civil Action No. 02-110-JMH, Memorandum Opinion and Order (E.D. Ky. Dec. 13, 2006) [attached to D.E. 2271, West Hills' Reply to Objections by GeoStar Corporation, Et Al.]. Setting aside the cases from this jurisdiction, even under the Second Circuit law applied by Defendants, prejudgment interest is appropriate in this case. *See Wickham Contracting Co. v. Local Union No. 3*, 955 F.2d 831, 833-35 (2d Cir. 1992) (finding that award of prejudgment interest was not abuse of discretion).

"The purpose of prejudgment interest is to 'compensate the plaintiff for the delay between the time the cause of action arose and the verdict.'" *McCoy v. Alfrey*, Civil Action No. 08-112, 2010 WL 4366120, at *7 (E.D. Ky. Oct. 28, 2010). Here Plaintiffs are seeking the return of the cash amounts they actually invested into the fraudulent Mare Lease program in 2003 and 2004, not a recovery of some benefit that they expected to derive at a later date. Defendants have had the benefit of the cash during this period, while Plaintiffs have been deprived of its use. The prejudgment interest award does no more than compensate Plaintiffs for this loss.

Contrary to Defendants' assertion, fairness and equity do not dictate a different result. Defendants have indisputably engaged in and benefitted from fraud on a grand scale, harming not only the Plaintiffs but dozens of others. By contrast, the Court rejected the argument that the

Plaintiffs bore responsibility for their own losses. Moreover, in this particular case, much of the delay resulted from the Defendants' own dilatory conduct. It serves no equitable purpose to penalize Plaintiffs, the victims, for this delay.

Finally, the mandatory nature of RICO's treble damages provision does not preclude an award of prejudgment interest. The Sixth Circuit has affirmed an award including both treble damages and prejudgment interest, and other courts have done the same. *See Kanza*, 996 F.2d at 2; *see also Grange Mut. Cas. Co. v. Mack*, Civil Action No. 02-110-JMH, Memorandum Opinion and Order (E.D. Ky. Dec. 13, 2006); *Guyana Tele. & Tele. Co. v. Melbourne Int'l Commc'ns, Ltd.*, 329 F.3d 1241, 1245 (11th Cir. 2003); *D'Orange v. Feely*, No. 95-7904, 1996 WL 446254, at *4 (2d Cir. Aug. 8, 1996) (unpublished); *Lerman v. Joyce Int'l, Inc.*, 10 F.3d 106, 109 (3rd Cir. 1993); *Al-Kazemi v. Gen. Acceptance & Inv. Corp.*, 633 F. Supp. 540, 543 (D.D.C. 1986) (including interest as part of actual damage calculation). Loss of the use of money (compensated by interest) comprises a component of the damages that the Plaintiffs have sustained. The RICO statute provides that Plaintiffs may recover three times their damages, without placing any limitation on what losses will be compensated, other than the general limit that Plaintiffs have suffered damage to their property or business. *See* 18 U.S.C. §1964(c). The fact that RICO mandates trebling after the calculation of compensatory damages does not preclude an award of interest as part of those damages.

D.  Plaintiffs' Calculation of Prejudgment Interest Uses an Appropriate Rate.

Just as the Court has wide discretion to make Plaintiffs whole by awarding prejudgment interest, the Court has wide discretion to select the appropriate interest rate. *See McCoy*, 2010 WL 4366120, at *7 (awarding prejudgment interest on § 1983 claim at state rate of 8%). While some courts have looked to the federal post-judgment interest statute to establish the applicable

8

rate in the absence of guidance in the particular act under consideration, many others have looked to state law. *See Quaker Oats Co. v. Int'l Chem. Workers Union*, No. 92-5070, 1993 WL 47199, at *3 (6th Cir. May 28, 1993) (unpublished) (where court has discretion to award prejudgment interest under LMRA, statute prejudgment interest rate should be used); *Verhoff v. Time Warner Cable, Inc.*, No. 3:05CV7277, 2007 WL 2815216, at *2 (N.D. Ohio Sept. 26, 2007) (interpreting the "prevailing rate" under the FMLA to be the state rate); *IBEW Local No. 573 v. Steen Elec., Inc.*, 232 F. Supp. 2d 797, 806 (N.D. Ohio 2002) (using state rate in case enforcing Labor-Management Committee award); *Ford Motor Co. v. Transport Indem. Co.*, 45 B.R. 843, 846-47 (E.D. Mich. 1984) (noting that the federal post-judgment interest statute does not preclude an award of prejudgment interest and finding that the state statutory amount represented a fair value). Significantly, both the Sixth Circuit and this Court have looked to state law for the appropriate prejudgment interest rate in RICO cases. *See Kanza*, 996 F.2d at 2; *Grange Mut. Cas. Co. v. Mack*, Civil Action No. 02-110-JMH, Memorandum Opinion and Order (E.D. Ky. Dec. 13, 2006). Given the similarity of Plaintiffs' RICO claims to state law fraud claims, and given this Court's and the Sixth Circuit's prior use of the state statutory rate in RICO claims, the rate used in the Keeney Report represents the most appropriate standard.

## CONCLUSION

For the reasons stated herein and in Plaintiffs' prior submissions to the Court, the Court should overrule the GeoStar Defendants' Objections and calculate damages as requested by Plaintiffs and reflected in their August 17, 2011 Notice.

9

Respectfully submitted,

/s/ Barry D. Hunter
Paul E. Sullivan
Barry D. Hunter
Medrith Lee Norman
Frost Brown Todd LLC
250 West Main Street, Suite 2700
Lexington, Kentucky 40507-1749
Telephone:   (859) 231-0000
Facsimile:    (859) 231-0011

Robert C. Webb
Frost Brown Todd LLC
400 West Market Street, 32nd Floor
Louisville, Kentucky 40202-3363
Telephone:   (502) 589-5400
Facsimile:    (502) 581-1087

Attorneys for West Hills Farms, LLC, Arbor Farms, LLC, Nelson Breeders, LLC, MacDonald Stables, LLC and Monica and Jaswinder Grover

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing has been electronically filed on September 9, 2011, with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the parties of record.

/s/ Barry D. Hunter
*Counsel for Plaintiffs West Hills Farms, LLC, Arbor Farms, LLC, Nelson Breeders, LLC, MacDonald Stables, LLC and Monica and Jaswinder Grover*

LEXLibrary 0108868.0536983   479366v1