```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                      CENTRAL DIVISION at LEXINGTON
```

| | | |
|---|---|---|
| IN RE CLASSICSTAR MARE LEASE LITIGATION | ) ) ) | MDL No. 1877 |
| and | ) ) | Master File: Civil Action No. 07-353-JMH |
| WEST HILLS FARMS, LLC, *et al.*, | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CLASSICSTAR, LLC, *et al.*, | ) ) | Civil Action No. 06-243-JMH |
| Defendants. | ) | **MEMORANDUM OPINION AND ORDER** |

**\*\*\* \*\*\* \*\*\***

This matter is before the Court upon Plaintiff's Motion for Relief Pursuant to Fed. R. Civ. P. 60(a) [DE 761], in which they ask the Court to correct a clerical error in the Judgment [DE 760] entered on October 11, 2011, to make the judgment consistent with the Court's Memorandum Opinion and Order of September 30, 2011 [DE 757]. The time for filing objections to Plaintiffs' motion has expired, and no objections have been heard. This matter is before the Court, as well, upon its own motion to reconsider its Memorandum Opinion and Order of September 30, 2011, in order to articulate the rationale for its decision with respect to the matter of whether there is liability for common law fraud and the amount of damages available to Plaintiffs from Defendant Strategic Opportunity Solutions, LLC d/b/a Buffalo Ranch ("Strategic Opportunity Solutions") with respect to Count II of the Fourth

Amended Complaint.

As articulated in its decision of September 30, 2011, in the Commonwealth of Kentucky, "[a] party claiming harm from fraud must establish six elements of fraud by clear and convincing evidence as follows: a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury." *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999) (fraud through direct misrepresentation); *Smith v. General Motors Corp.*, 979 S.W.2d 128, 130 (Ky. Ct. App. 1998) (failure to disclose may be actionable where one party to a contract has superior information and is relied upon to disclose same when it fails to do so or where reliance is based on only a partial disclosure); *Raymond-Elderedge Co., Inc. v. Security Realty Inv. Co.*, 91 F.2d 168, 173 (6th Cir. 1937) (one who clothes another with the power to commit fraud and then remains silent may be liable); *Lappas v. Barker*, 375 S.W.2d 248, 272 (Ky. 1963) (one who aids and abets fraud by a fiduciary becomes jointly liable); *Kirby v. Firth*, 311 S.W.2d 799, 802 (1958) (one who accepts proceeds of agents' fraud with knowledge ratifies that fraud and becomes liable because, "[t]hough innocent himself at the time of the misrepresentation, one may not accept the fruits of a business deal and at the same time disclaim responsibility for the measures by which they were acquired.").

The Court has already determined that actionable misrepresentations were made to Plaintiffs with respect to their investments in the ClassicStar Mare Lease Program, attributable to Defendants Tony Ferguson, Thom Robinson, John Parrott, David Plummer, Spencer Plummer, ClassicStar 2004, LLC, ClassicStar Farms, Inc., and GeoStar Corporation or their agents. The question now is whether any of the material misrepresentations made and the harm that flowed from them can be attributed to Strategic Opportunity Solutions, and the Court builds on its September 30, 2011, Memorandum Opinion and Order in concluding that they can be so attributed.

Plaintiffs argue that Strategic Opportunity Solutions is liable for the harm occasioned by the fraudulent scheme and misrepresentations because it, by and through its principal, David Plummer, entered into quarter horse "leases" for 2002, 2003, and 2004, which were used to disguise the lack of thoroughbred mares in the Mare Lease Programs. Ultimately, the undisputed evidence shows that Plummer "loaned" quarter horses to ClassicStar and that the quarter horses were never intended for breeding in the Mare Lease Program. [*See* DE 757 at p. 7.] Rather, those "performance horses", i.e., not thoroughbreds, served only as placeholders for ClassicStar Mare Lease participants. It was only after the fact that ClassicStar and Strategic Opportunity Solutions entered into

backdated "Mare Lease and Breeding Agreements."[1]

Ultimately, Strategic Opportunity Solutions agreed to lease the warm bodies of its performance horses to cover up the most basic element of the fraud at bar in this case – the lack of adequate breeding stock in the Mare Lease Programs to provide the opportunity upon which Plaintiffs' investments were made. Strategic Opportunity Solutions' principal, David Plummer, knew that the Mare Lease Programs were underpopulated with thoroughbred breeding pairings when he decided to commit Strategic Opportunity Solutions to its agreement with ClassicStar. He also knew that, in his role with ClassicStar, he would use those performance horses as nothing more than "placeholders" on breeding schedules for Mare Lease Program Investors until those investors could be moved on to other investments.

Here, there is no doubt that Strategic Opportunity Solutions aided and abetted fraud by ClassicStar and the others. Strategic

---

[1] While the three agreements were ostensibly entered into in September 2003, December 2003, and November 2004, respectively, it appears that they were actually drafted some time later, in December 2004, since David Plummer, Spencer Plummer, Tony Ferguson, and Terry Green were exchanging emails about the drafts as late as December 1, 2004, in which it was explained that everyone understood that the mares and foals were to be returned to Strategic Opportunity Solutions in lieu of any payment from ClassicStar — any agreement to the contrary notwithstanding. It would be only another year before GeoStar would void those leases, when they and the ClassicStar entities parted ways with the Plummers, meaning that no Mare Lease Program investor could ever hope to benefit from those leased performance horse breeding opportunities under the terms of the written agreement.

Opportunity Solutions knew, by and through David Plummer, what fraud was afoot and gave its blessing and its horses to that cause without telling anyone, least of all Plaintiffs, about the ruse. It intended for Plaintiffs to rely upon the misrepresentations about the breeding pairings available to Mare Lease Program participants to their detriment, and they did – investing enormous sums of money in the program and trading out those opportunities for others when encouraged to do so, under the mistaken belief that their investment in the Mare Lease Programs was worth what they had invested.

Although the Court declined to address the measure of damages for Plaintiffs' common law fraud claims further in its earlier order, it must reach this issue with respect to Strategic Opportunity Solutions' liability to Plaintiffs solely with respect to common law fraud. In the Commonwealth of Kentucky, "[t]he measure of damages for fraud is, as a general rule, the actual pecuniary loss sustained." *Sanford Const. Co. v. S & H Contractors, Inc.*, 443 S.W.2d 227, 239 (Ky. 1969) (quoting 37 Am.Jur.2d 458, Fraud and Deceit, section 342; citing *Campbell v. Hillman*, 15 B.Mon.(Ky.) 508 (1854)). Thus, a plaintiff is "entitled to recover such damages in a tort action as will compensate him for the loss or injury actually sustained and place him in the same position that he would have occupied had he not been defrauded." *Id.*

This mirrors the amount of damages available to Plaintiffs for the harm occasioned by the predicate acts of the defendants liable under RICO. *Fleischhauer v. Feltner*, 879 F.2d 1290, 1299 (6th Cir. 1989) (defining damages in context of civil RICO claim) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985)); *see also Waters v. Int'l Precious Metals Corp.*, 172 F.R.D. 479, 506 (S.D. Fla. 1996) (holding that, with respect to the calculation of damages caused by RICO violations where an investment scheme is the source of the harm, the "appropriate measure is the total amount of Plaintiff's out of pocket capital invested which they would not have invested but for the Alleged Scheme"). Had Plaintiffs not been defrauded by these defendants, including Strategic Opportunity Solutions, they would not have experienced the harm occasioned as a result of the fraud – the money invested in the Mare Lease Programs. As articulated in the Court's earlier Memorandum Opinion and Order, the out-of-pocket losses for Plaintiffs as a result of their investment in the Mare Lease Program total $16,468,603.87. This amount also represents the damage done to Plaintiffs by virtue of Strategic Opportunity Solutions' fraud.

Accordingly, **IT IS ORDERED**:

(1) that Plaintiff's Motion for Relief Pursuant to Fed. R. Civ. P. 60(a) is **GRANTED**;

(2) that the judgment entered on October 11, 2011, is **STRICKEN AND HELD FOR NAUGHT**;

(3)     that a separate order of judgment shall issue.

This the 8th day of November, 2011.



**Signed By:**

**_Joseph M. Hood_**

**United States Senior Judge**