### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF KENTUCKY
### CENTRAL DIVISION AT LEXINGTON

| | | |
|---|---|---|
| IN RE CLASSICSTAR MARE LEASE LITIGATION | ) ) ) | **MDL No. 1877** |
| AND | ) ) ) | **Master File:** **Civil Action No.: 5:07-cv-353-JMH** |
| WEST HILLS FARMS, LLC, ET AL. | ) ) ) | |
| PLAINTIFFS | ) ) | |
| V. | ) ) | **CASE NO.: 06-243-JMH** |
| CLASSICSTAR, LLC, ET AL. | ) ) ) | |
| DEFENDANTS | ) | |

### PLAINTIFFS WEST HILL FARMS, LLC, ARBOR FARMS, LLC, NELSON BREEDERS, LLC, MACDONALD STABLES, LLC AND MONICA AND JASWINDER GROVER'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR INJUNCTIVE RELIEF

Plaintiffs West Hill Farms, LLC, Arbor Farms, LLC, Nelson Breeders, LLC, MacDonald Stables, LLC, and Monica and Jaswinder Grover (collectively, "the Investors"), respectfully request that the Court enjoin Defendants, their agents, and potential transferees from transferring and dissipating assets under 18 U.S.C. § 1964(a) and Fed. R. Civ. P. 65, on the grounds that Defendants' fraudulent and misleading actions, as the Court found in its September 30, 2011 Memorandum Opinion and Order, present a strong likelihood that the Defendants may transfer, conceal, and dispose of assets in order to defeat attachment and execution of the final judgment in the Investors' favor.

### INTRODUCTION

The Plaintiffs in this case are a group of investors in a mare leasing program that were defrauded of several million dollars by the Defendants in violation of RICO. For years, the

Defendants operated a criminal enterprise and profited handsomely from it.   The Court issued summary judgment to the Investors and granted them a judgment of $49,405,811.61, with prejudgment interest of $15,636,273.00.   The Investors, through their own investigation, discovered that several of the Defendants are now seeking to transfer and dissipate illegally and fraudulently obtained assets that can be used to satisfy the Court's judgment.  The Investors have not had an opportunity to propound post-judgment discovery related to the Defendants' assets and have no adequate remedy at law to preserve those assets once post-judgment discovery is issued.

Because the Investors have no adequate remedy at law, they now seek injunctive relief in accordance with 18 U.S.C. § 1964(a) to enjoin the Defendants from retaining income and benefits received from the Defendants' illegal and fraudulent scheme.  The Investors, moreover, seek injunctive relief to prevent the Defendants, their agents, and potential transferees from transferring and dissipating assets in violation of RICO.  Injunctive relief is appropriate here because:  (1) the Investors have succeeded on the merits, and thus, demonstrate more than just a likelihood of success on the merits; (2) the Investors will suffer irreparable harm without injunctive relief because the Defendants can transfer and dissipate their assets to render the Court's judgment meaningless; (3) the balance of harms favors the Investors because the transfer and dissipation of assets will deny the Investors restitution; and (4) injunctive relief would serve the public interest because enjoining the Defendants would enforce RICO and ensure compliance with the Court's orders.

## BACKGROUND

On September 30, 2011, the Court issued its Memorandum Opinion and Order granting summary judgment to the Investors on their claims for breach of contract, common law fraud,

2

and violations of the Racketeer Influenced Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961-68.  In so doing, the Court made several findings.  The Court first held that the Defendants "knowingly participated in a scheme to defraud Plaintiffs and acted from the beginning with knowledge of the common purpose to utilize the Mare Lease Program as a mechanism to finance development of oil and gas properties."[1]  The Court further held that the Defendants had extensively used the mails and wires to maintain and perpetuate this fraudulent scheme in violation of 18 U.S.C. § 1962:

> Plaintiffs have identified no fewer than thirty-seven uses of the mails and wires for the purpose of executing the fraudulent scheme or artifice within a three year time frame which create a pattern of racketeering activity, ranging from letters, checks, and other items sent through the mails…and large sums of money wired in interstate transmissions on at least 3 occasions.[2]

But, as the Court found, the Defendants' illegal and fraudulent scheme involved even more.  In furtherance of their scheme to defraud the Investors, the Defendants knowingly misled the Investors about tax deductions and constantly transferred funds through the various entities that comprised their unlawful enterprise.[3]  The Defendants used Geostar to make "massive transfers of funds from Classicstar, leaving it undercapitalized, and orchestrat[ed] loans through NELC to encourage more investments in Mare Lease Programs that were oversold."[4]  The individual Defendants, moreover, were "shapeshifters" when it came to their fraudulent

---

[1] *In re Classicstar Mare Lease Litigation*, MDL No. 1877, No. 07-353-JMH, Memorandum Opinion ("Mem. Op.") [DN 757], p. 62; *see also In re Classicstar Mare Lease Litigation*, MDL No. 1877, No. 07-353-JMH, Memorandum Opinion (Nov. 8, 2011) ("Mem. Op. (Nov. 8, 2011)") [DN 2344], pp. 6-7

[2] Mem. Op., p. 58.

[3] *Id*. at 9, 60.

[4] *Id*. at 60.

3

enterprise.[5]  They could be officers of GeoStar one day, Gastar the next, and ClassicStar the day after.[6]  From this evidence, the Court concluded that the Investors had satisfied all the elements for relief under 18 U.S.C. § 1962, and granted them a judgment of $49,405,811.61, with prejudgment interest of $15,636,273.00.[7]

Since the entry of the Memorandum Opinion and Order and Judgment, certain individual Defendants have taken steps to sell their assets to avoid satisfaction of the Court's judgment through attachment and execution.  For example, upon information and belief, Defendant Tony Ferguson has placed a houseboat, which rivals the Belle of Louisville in size and comes complete with two helipads, up for sale.[8]  And David and Spencer Plummer, through Buffalo Ranch, are now selling several foals and mares at prices ranging from $15,000 to $100,000.[9]  In all probability, the remaining individual and corporate Defendants are likewise taking steps to transfer and dissipate their assets to avoid attachment and execution of the Court's judgment under Fed. R. Civ. P. 64 and 69(a)(1).[10]

## ARGUMENT

**I.    28 U.S.C. § 1964(a) permits the Court the authority to enjoin Defendants from transferring and dissipating their assets to avoid satisfying the Court's judgment.**

Under 18 U.S.C. § 1964(a), "[t]he district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing

---

[5] *Id.*

[6] *Id.*

[7] Judgment [DN 760], *stricken by* Mem. Op. (Nov. 8, 2011), p. 6; *see also* Judgment [DN 2345].

[8] *See* Exhibit ("Ex.") A.

[9] *See* Ex. B.

[10]  The Investors previously moved for a preliminary injunction in response to the Defendants' deficient discovery responses.  The Court considered this preliminary injunction motion at a January 5, 2007 hearing, and ultimately decided not to enter an injunction because the parties reached an agreement concerning discovery.  *In re Classicstar Mare Lease Litigation*, MDL No. 1877, No. 07-353-JMH, January 5, 2007 Civil Minutes [DN 98].

appropriate orders, including…imposing reasonable restrictions on the future activities or investments of any person…." 18 U.S.C. § 1964(a).  Injunctive relief under Fed. R. Civ. P. 65 is among the "reasonable restrictions" a court may impose "on the future activities or investment of any person…." *Id.*; *see also NCR Corp. v. Feltz*, Nos. 91-4011, 91-4033, and 91-4058, 1993 WL 11876, at *2, 983 F.2d 1068 (6th Cir. 1993) (Table).  This is because injunctive relief is "aimed at separating the RICO criminal from the enterprise so that he cannot commit violations in the future." *United States v. Philip Morris USA, Inc.*, 396 F.3d 1190, 1198 (D.C. Cir. 2005). Indeed, injunctive relief not only preserves the status quo, but also "preserves [the Investors'] restitutionary rights and prevents potential fraudulent transfers." *Feltz*, at *3; *U.S. Securities and Exchange Comm'n v. Onyx Capital Advisors, LLC*, No. 10-CV-11644, 2011 WL 4528216, at *2 (E.D. Mich. Sept. 29, 2011) (slip opinion).[11]

Further, injunctive relief under 18 U.S.C. § 1964(a) is not limited to the pretrial stage. While injunctive relief is commonplace at the pretrial stage under the statute, *see EBSCO Industries, Inc. v. Lilly*, 840 F.2d 333 (6th Cir. 1988), such relief is also available post-judgment. *See In re Uranium Antitrust Litigation*, 617 F.2d 1248, 1259 (7th Cir. 1980) (granting injunctive relief to prevent the dissipation of assets after granting default judgment to plaintiff).  As long as the injunctive relief is aimed at restraining some future violation of RICO, there is no reason to not enjoin defendants from transferring and dissipating assets at the post-judgment stage. *See id.*; *see also Philip Morris*, 396 F.3d at 1200 ("The remedies explicitly granted in § 1964(a) are all directed toward future conduct…."); *United States v. Carson*, 52 F.3d 1173, 1184 (2d Cir.

---

[11] A criminal conviction is not a prerequisite for injunctive relief under 18 U.S.C. § 1964(a).  *See USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 95 (6th Cir. 1982) (citation omitted); *see also Sedima v. Imrex Co.*, 473 U.S. 479, 488 (1985).

1995) ("[A] district court has broad discretion to enjoin possible future violations of law where past violations have been shown.").[12]

### A. Injunctive relief is required here because the Investors seek to enjoin future violations of 18 U.S.C. § 1962.

Courts have "broad discretion" under 18 U.S.C. § 1964(a) to enjoin potential violations of 18 U.S.C. § 1962 because a defrauded party's right to restitution is "the very purpose of RICO." *State of Mich., Dep't of Treasury, Revenue Div. v. Fawaz*, 653 F. Supp. 141, 144 (E.D. Mich. 1986); *Carson*, 52 F.3d at 1184. Without injunctive relief, the purpose of the statute is "frustrated by allowing a defendant to transfer…illegal proceeds to a knowing third party." *United States v. Regan*, 858 F.2d 115, 120 (2d Cir. 1988) (citation omitted). Thus, the primary aim of injunctive relief under RICO is to provide restitution to a defrauded plaintiff and prevent possible fraudulent transfers. *See Feltz*, at 3. Otherwise, a defendant would reap the benefit of illegally obtained funds, while leaving the plaintiff empty-handed. *See In re Uranium Antitrust Litigation*, 617 F.2d at 1259 (holding that default judgment "would have been rendered meaningless" had the district court not enjoined the defendants from transferring assets outside the country).

---

[12] The All Writs Act, 28 U.S.C. § 1651, may be another source for issuing an injunction to protect the Court's judgment. *See* 28 U.S.C. § 1651(a) ("The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdiction and agreeable to the usage and principles of law."). But the circuits are split as to whether the statute permits district courts to issue preliminary injunctions to effectuate a judgment. *See In re Uranium Antitrust Litigation*, 617 F.2d at 1259-60 (stating that the All Writs Act can be used to protect a judgment); *Accord Ward v. Pennsylvania New York Central Transportation*, 456 F.2d 1046, 1048 (2d Cir. 1972); *but see Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1526 n.13 (11th Cir. 1994) (holding that All Writs Act is limited to "the preservation or exercise of its subject matter jurisdiction.") (quoting *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978)); *United States v. Cohen*, 152 F.3d 321, 325 (4th Cir. 1998) (holding that All Writs Act is only relevant when an "order is in aid of an injunction which had been otherwise issued."). The Sixth Circuit has never directly addressed the question, but seemingly falls within the same camp as the Seventh and Second Circuits. *See United States v. Perry*, 360 F.3d 519, 539 (6th Cir. 2004) ("The All Writs Act only allows the district court to issue an order attempting to effectuate its earlier order."); *see also id.* at 534 ("At first glance, the All Writs Act seems to authorize a district court to issue any subsequent order in furtherance of an initial order as long as the initial order was lawful."); *FTC v. Int'l Computer Concepts, Inc.*, No. 5:94CV1678, 1994 WL 730144, at *12 (N.D. Ohio Oct. 24, 1994) (relying on the All Writs Act to issue an asset freeze injunction). By issuing an injunction here, the Court would ensure the enforcement of its prior judgment, which is consistent with the central purpose of the All Writs Act, as recognized by the Sixth Circuit in *Perry*.

The Defendants' sale and transfer of their assets is a "possible future violation" of RICO that must be enjoined. *Carson*, 52 F.3d at 1184. 18 U.S.C. § 1962(a) makes it "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity…to use or invest, directly or indirectly any part of such income…." 18 U.S.C. § 1962(a). In its Memorandum and Order, the Court found that the Defendants earned $16,468,603.87 in income from the Investors, which was primarily derived through racketeering activity prohibited by RICO.[13] But by transferring and dissipating their assets to avoid the Court's judgment, the Defendants will retain the benefits of what the Court viewed as illegally and fraudulently obtained income. *Cf. Onyx Capital Advisors*, at *2 (interpreting the Securities Act and holding that defendant could not "use his ill-gotten gains to pay for his legal defense…."); *see also LaRocca v. Borden, Inc.*, 276 F.3d 22, 28 (1st Cir. 2002) ("[R]estitution is measured by the defendant's unjust gain.").[14]

Such a result would not only violate RICO's broad remedial purpose to provide restitution to RICO victims, but also contradicts the express terms of 18 U.S.C. § 1962(a), which prohibits the use of any income received from racketeering activity. And as several circuits have recognized, including the Sixth Circuit, district courts have the express authority under 18 U.S.C. § 1964(a) to prevent possible future fraudulent transfers and the dissipation of assets to avoid payment of a valid judgment that is designed to provide restitution to RICO victims. *See, e.g., Feltz*, at *3; *see also Carson*, 52 F.3d at 1183; *Philip Morris*, 936 F.3d at 1198; *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 53 (1st Cir. 1986) ("[A] preliminary injunction can be granted when it is necessary to protect the damages remedy."); *Hoxworth v. Blinder Robinson & Co., Inc.*, 903 F.2d 186, 189 (3d Cir. 1990). A grant of injunctive relief here would serve the same purpose:

---

[13] Mem. Op., p. 95.

[14] *Id.*

7

the Defendants would be enjoined from any further efforts to transfer and dissipate assets, thereby providing the Investors the ability to satisfy their judgment through attachment and execution under Fed. R. Civ. P. 64 and 69.

### B. Injunctive relief is required because the Investors have no adequate remedy at law.

In *Lilly*, the Sixth Circuit held that "a preliminary injunction may not be granted unless there are valid findings that the legal remedy provided by the state's attachment statutes under Rule 64 is inadequate." *Lilly*, 840 F.2d at 335. Yet the state's attachment statutes must be "as practical and efficient to the ends of justice as the remedy in equity by injunction." *USACO Coal*, 689 F.2d at 99. But Kentucky's attachment statute, KRS 425.301, does not have the broad scope necessary to prevent the transfer and dissipation of assets by the Defendants.

While KRS 425.301 permits the attachment of assets outside Kentucky, it does not *preserve* potential assets that can be used to satisfy the Investors' judgment against the Defendants. And "[a]t this point in the litigation it is unlikely that [the Investors] can accurately determine the holdings of [the] [D]efendants that are subject to their equitable claims." *USACO Coal Co.*, 689 F.2d at 99. Currently, the Investors are only aware of assets that they have discovered through their own investigation and without the assistance of post-judgment discovery under Fed. R. Civ. P. 69(b). Post-judgment discovery under Fed. R. Civ. P. 69(b) may reveal additional assets, other fraudulent transfers, and the concealment of assets by the Defendants. Yet KRS 425.301 does not contain a single provision that preserves assets during post-judgment discovery. Thus, the Defendants are free to take advantage of the delay in preparing post-judgment discovery and attachment pleadings to transfer and dissipate assets. *See*

*Feltz*, at \*2 (granting injunctive relief because compliance with attachment statutes would lead to unnecessary delay).[15]  This is simply not permitted under the law.

## II.   All the elements for injunctive relief under Fed. R. Civ. P. 65 are satisfied in this action.

Four factors must be met for injunctive relief: (1) the likelihood of the Investors' success on the merits; (2) whether the injunction will save the Investors from irreparable harm; (3) whether the injunction would harm others; and (4) whether the public interest would be served. *See, e.g.*, *Int'l Longshoremen's Ass'n v. Norfolk Southern Corp.*, 927 F.2d 900, 903 (6th Cir. 1991).   The factors for injunctive relief are not rigid requirements; rather, "a balancing is required, and not the mechanical application of a certain form of words." *Wilkinson v. Jones*, 876 F. Supp. 916, 924 (W.D. Ky. 1995); *see also Suster v. Marshall*, 149 F.3d 523, 528 (6th Cir. 1998) ("These factors simply guide the discretion of the court...."). Findings are required for each of the factors, "unless fewer are dispositive of the issue." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985).  As explained below, each of these factors is satisfied here.

### A. The Investors have succeeded on the merits and established more than just a mere likelihood of success on the merits.

The first requirement for injunctive relief, the likelihood of the plaintiff's success on the merits, is more than met here.   Indeed, in its Memorandum Opinion, the Court granted the Investors summary judgment on their breach of contract, common law fraud, and civil RICO claims.  The Investors thus present more than a likelihood of success on the merits; they have succeeded on the merits and obtained a judgment against the Defendants.   And "[s]ince a judgment of liability has been entered against the...[D]efendants, there is clearly more than a

---

[15] The Defendants recently filed a Motion to Alter and Amend the Court's Amended Final Judgment which will cause additional delay and allow the Defendants to transfer and dissipate assets.

reasonable likelihood of success on the merits." *In re Uranium Antitrust Litigation*, 617 F.2d at 1261.

**B. The Investors will suffer irreparable harm if the Defendants are permitted to transfer and dissipate their assets to avoid the Court's judgment.**

In *USACO Coal*, the Sixth Circuit squarely held that a defendant's transfer and dissipation of assets constitutes irreparable harm. *E.g.*, *USACO Coal*, 689 F.2d at 98. In so holding, the panel explained that the defendant could "easily dispose" of his assets and transfer any of the proceeds to foreign enterprises. *Id.* The Sixth Circuit found that, in the absence of injunctive relief, the defendant's transfer and dissipation of assets would irreparably harm the plaintiffs' right to restitution. *See id.* The Sixth Circuit later applied identical rationale under virtually similar facts in *Feltz*. *See Feltz*, at *3. This case invokes the same underlying concern present in both *USACO Coal* and *Feltz*. As in those cases, the Defendants here seek to circumvent the Court's judgment by selling off assets that can be used to provide restitution to the Investors in accordance with RICO's broad remedial provisions.

First, upon information and belief, three of the Defendants – Ferguson, David Plummer, and Spencer Plummer – are already taking steps to sell off their personal property to avoid satisfaction of the Court's judgment.[16]  Upon information and belief, Ferguson is currently seeking to sell a houseboat likely worth more than a million dollars, while the Plummers have a number of horses, each worth several thousand dollars, up for sale. These facts alone are sufficient for injunctive relief because the Defendants' transfer and dissipation of these assets, in addition to others, could possibly render the Court's judgment virtually worthless. *See In re Uranium Antitrust Litigation*, 617 F.2d at 1259.

---

[16] Ex. A; *see also* Ex. B.

10

Second, the Court may infer irreparable harm from the Defendants' unlawful and fraudulent conduct toward the Investors.   Central to the Sixth Circuit's decision to affirm the district court's grant of injunctive relief in *USACO Coal* was the fact that the defendant had engaged in "questionable dealings in matters connected to the present lawsuit...." *USACO Coal*, 689 F.2d at 98.   The Sixth Circuit held that the district court could reasonably infer from those "questionable dealings" that the defendant would transfer and dissipate his assets to avoid satisfying a judgment against him. *See id.*; *see also Philip Morris*, 396 F.3d at 1203 (Williams, J., concurring) ("[The equity court] can decree relief targeted to [the defendant's] plausible future behavior.").   Similarly, in *Onyx Capital Advisors*, the district court found injunctive relief appropriate because the record demonstrated several instances of fraudulent conduct and transfers between various entities operated by the defendant. *See Onyx Capital Advisors*, at *2. The court further noted that the defendant had transferred funds from those entities into his personal bank account. *Id*.   From those facts, the court concluded that injunctive relief would "preserve funds" for a potential judgment against the defendant. *Id*.   As the Court's Memorandum Opinion and Order here shows, this case is no different.

As explained above, the Court's Memorandum Opinion and Order exhaustively describes the Defendants' efforts to defraud the Investors in violation of RICO.   Notably, the Court found that the Defendants had extensive knowledge and ability to use the mails and wires to transfer funds.[17]   The Court additionally found that the Defendants made "massive transfers of funds" between Geostar, ClassicStar, and other corporate defendants.[18]   In short, the Defendants here engaged in exactly the type of conduct that led to the injunctions in *USACO Coal* and *Onyx Capital Advisors*: they perpetuated a scheme to defraud the Investors of roughly $16 million and

---

[17] Mem. Op., p. 58.

[18] *Id*. at 60.

11

are now making efforts to deplete the reserve of assets available to satisfy the Court's judgment. Thus, "it is evident that without the Court's use of injunctive powers[,] [the Investors'] ability to satisfy the judgment would be seriously jeopardized." *In re Uranium Antitrust Litigation*, 617 F.2d at 1261. This constitutes irreparable harm.

### C. The balance of harms favors the Investors.

Injunctive relief will not place a heavy burden on the Defendants. But even if it did, it is a burden that is imposed by Congress through 18 U.S.C. § 1964(a) and the Defendants' own illegal and fraudulent conduct. Moreover, a carefully worded injunction requiring prior approval by the Court of any transfers of funds and transactions protects the Defendants' ability to engage in legitimate business activities. *See USACO Coal*, 689 F.2d at 99; *see also In re Uranium Antitrust Litigation*, 617 F.2d at 1261; *Onyx Capital Advisors*, at *2. The threatened harm to the Investors of the potential dissipation and transfer of assets, on the other hand, is substantial. The transfer and dissipation of assets would render the Court's judgment and this litigation meaningless. *See USACO Coal*, 689 F.2d at 99. More importantly, the dissipation and transfer of assets would deny the Investors' restitution rights, which is what Congress intended to protect in 18 U.S.C. § 1964. *See Philip Morris*, 396 F.3d at 1200.

### D. Injunctive relief in furtherance of RICO's objectives benefits the public interest.

Injunctive relief consistent with RICO does not disserve the public interest. On the contrary, injunctive relief "serves a strong national interest in effective and meaningful enforcement" of RICO and other laws aimed at preventing fraudulent investment schemes. *In re Uranium Antitrust Litigation*, 617 F.2d at 1261. There is no public interest in perpetuating an illegal and fraudulent scheme that deceives investors and misrepresents the substance of the

nation's tax laws.[19]   Accordingly, "the pattern of conduct engaged in by the [Defendants] can only disserve the public interest[,] and the public interest is best served by a firm insistence" that the Defendants comply with the orders and mandates by the Court. *Id.*

## CONCLUSION

The equities strongly favor injunctive for the Investors in this case.  This is a case of a deliberate, and as the Court found, illegal and fraudulent scheme to swindle the Investors out of several million dollars.  The Defendants are now trying to preserve the benefits of their ill-gotten gains by transferring and dissipating assets to avoid compliance with the Court's judgment. Permitting the Defendants to continue efforts to transfer and dissipate their assets would irreparably harm the Investors' ability to satisfy the Court's judgment and frustrate the purpose of RICO to provide them restitution.  For the same reason, the balance of harm favors injunctive relief.

The public interest also favors injunctive relief.  In addition to serving the strong public interest in enforcing RICO laws to prevent fraudulent schemes like the one present here, injunctive relief also serves the public interest by maintaining respect for court orders.  For the foregoing reasons, the Investors are entitled to injunctive relief.

---

[19] Mem. Op., p. 9.

13

Respectfully submitted,

/s/ Junis L. Baldon
Paul E. Sullivan
Barry D. Hunter
Medrith Lee Norman
Frost Brown Todd LLC
250 West Main Street, Suite 2700
Lexington, Kentucky 40507-1749
Telephone:     (859) 231-0000
Facsimile:     (859) 231-0011


-and-

Robert C. Webb
Junis L. Baldon
Frost Brown Todd LLC
400 West Market Street, 32nd Floor
Louisville, Kentucky 40202-3363
Telephone:     (502) 589-5400
Facsimile:     (502) 581-1087

*Attorneys for Plaintiffs West Hills Farms, LLC, Arbor Farms, LLC, Nelson Breeders, LLC, MacDonald Stables, LLC and Monica and Jaswinder Grover*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing has been electronically filed on November 30, 2011, with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

**Simona Alessandra Agnolucci**
sagnolucci@howardrice.com
**Jason Trent Ams**
jta@gdm.com,ckw@gdm.com
**Timothy S. Arnold**
timarn@bkf-law.com,termie@bkf-law.com
**Mark Bradley Blackburn**
mblackburn@erskine-blackburn.com
**Jayson E. Blake**
jeb@millerlawpc.com,cbc@millerlawpc.com,sed@millerlawpc.com,jns@millerlawpc.com,asl@millerlawpc.com
**Jennifer Julie Cave**
jca2@gdm.com,mlw@gdm.com,ckw@gdm.com
**David Z. Chesnoff**
dzchesnoff@cslawoffice.net
**Neal D. Colton**
ncolton@cozen.com
**Emily H. Cowles**
ehc@morganandpottinger.com
**Jason W. Crowell**
jwcrowell@stoel.com,docketclerk@stoel.com
**Stephen J. Defeo**
sdefeo@brownconnery.com
**Nathan Ray Denney**
ndenney@cnmlaw.com
**B. Dye, Jr.**
pdye@velaw.com,shuyck@velaw.com
**Dennis K. Egan**
degan@kotzsangster.com
**Blake C. Erskine, Jr.**
berskine@erskine-blackburn.com,dmarlin@erskine-blackburn.com,vflores@erskine-blackburn.com
**Angela S. Fetcher**
angela.fetcher@skofirm.com
**Steven C. Forman**
scformanlaw@comcast.net
**Earl M. Forte**
forte@blankrome.com
**Eric D. Freed**
efreed@cozen.com,ncolton@cozen.com,mmerola@cozen.com

**Joseph M. Garemore**
jgaremore@brownconnery.com
**Michael Joseph Gartland**
mgartland@dlgfirm.com,dlgecfs@gmail.com,dlgecf@dlgfirm.com
**James Douglas Gilson**
jgilson@cnmlaw.com
**Lea Pauley Goff**
lea.goff@skofirm.com,ginger.whitehouse@skofirm.com
**Jonathan Scott Goldman**
goldman-js@blankrome.com
**Ronald L. Green**
rgreen@greenandchesnut.com,dhobson@greenandchesnut.com
**Norman E. Greenspan**
greenspan@blankrome.com
**Stephen E. Gross**
gross-s@blankrome.com
**Culver V. Halliday**
culver.halliday@skofirm.com
**John W. Hays**
jwhays@jacksonkelly.com,tslangham@jacksonkelly.com
**Nancy L. Hendrickson**
nancy@hendricksonlawfirm.com
**George Edward Henry, II**
geh@hwgsg.com
**Robin Luce Herrmann**
luce-herrmann@butzel.com
**Gloria S. Hong**
gshong@stoel.com
**Richard J. Idell**
richard.idell@idellseitel.com,courts@idellseitel.com
**John G. Irvin, Jr.**
jirvin@ksattorneys.com
**Brent E. Johnson**
bjohnson@hollandhart.com
**Brian M. Johnson**
b0mj@gdm.com,ejk@gdm.com,ckw@gdm.com
**Terry E. Johnson**
tjohnson@pjmlaw.com
**Jonathan F. Jorissen**
jorissen@butzel.com
**Jeremy T. Kamras**
jkamras@howardrice.com,nprince@howardrice.com,jcaruso@howardrice.com
**Benjamin Samuel Klehr**
bklehr@cozen.com
**George J. Krueger**
krueger@blankrome.com

16

**Matthew L. Lalli**
mlalli@swlaw.com
**Janet Knauss Larsen**
larja@fosterpdx.com,decks@fosterpdx.com
**Matthew R. Lindblom**
matthew.lindblom@skofirm.com,geena.brangers@skofirm.com
**John E. Lucian**
lucian@blankrome.com
**Kara Read Marino**
kmarino@hwgsg.com
**Romaine C. Marshall**
rcmarshall@hollandhart.com,lcpaul@hollandhart.com,slclitdocket@hollandhart.com,intaketeam
@hollandhart.com
**Steven M. McCauley**
smccauley@mis.net
**Taft A. McKinstry**
federaldistricteky@fowlerlaw.com,fmbfederaldistrict@gmail.com
**Charles C. Mihalek**
cmihalek@mis.net
**Alisa E. Moen**
moen@blankrome.com,berry@blankrome.com
**John O'Neill Morgan, Jr.**
court@johnomorganjr.com,john@johnomorganjr.com,johnmorga@gmail.com
**Marc L. Newman**
mln@millerlawpc.com
**Elizabeth E. Nicholas**
eenicholas@jacksonkelly.com
**Kenneth Bradley Oakley**
kboakley@jacksonkelly.com
**David H. Oermann**
oermann@brrlawyers.com
**David Andrew Owen**
dao@gdm.com,ejk@gdm.com,ckw@gdm.com,abc@gdm.com
**Pamela Dae Perlman**
pdperlman@hotmail.com
**Jason M. Powers**
jpowers@velaw.com
**C. Randall Raine**
crr@hwgsg.com
**Elizabeth Juliana Rest**
elizabeth.rest@idellseitel.com,erest@idellseitel.com
**Ronald E. Reynolds**
ron@brrlawyers.com,oermann@brrlawyers.com,kathy@brrlawyers.com,julie@brrlawyers.com
**Catherine L. Sakach**
csakach@duanemorris.com

**Ory Sandel**
ory.sandel@idellseitel.com
**Richard A. Schonfeld**
rreyes@cslawoffice.net
**David W. Scofield**
dws@psplawyers.com
**Gilbert Ross Serota**
gserota@howardrice.com
**J. Ronald Sim**
jrsim@stoel.com,sea_docket@stoel.com,gshong@stoel.com,ldlomax@stoel.com
**Jeffrey Alan Springer**
jspringer@springer-and-steinberg.com,zjobe@springer-and-steinberg.com
**Matthew A. Stinnett**
mas2@gdm.com,ckw@gdm.com
**James T. Strawley**
strawley@blankrome.com
**David P. Thatcher**
david.thatcher@ogletreedeakins.com,kristy.burroughs@ogletreedeakins.com
**James D. Thompson, III**
jthompson@velaw.com,dglasson@velaw.com
**Kyle C. Thompson**
kthompson@sywlaw.com,ksedell@sywlaw.com
**Amanda Lee Tomlin**
atomlin@bsglex.com
**Ahndrea R. Van Den Elzen**
arv@pjmlaw.com
**Mickey T. Webster**
mwebster@wyattfirm.com,smcintyre@wyattfirm.com,rhobson@wyattfirm.com,jross@wyattfirm.com
**Jana M. Smoot White**
federaldistricteky@fowlerlaw.com,fmbfederaldistrict@gmail.com
**T. Scott White**
tsw@morganandpottinger.com
**Kenneth W. Yeates**
kyeates@sywlaw.com,ksedell@sywlaw.com

I further certify that on this same date I mailed the foregoing document and the notice of electronic filing by first class mail to the following non-CM/ECF participants:

Elizabeth Holt
7200 S. Alton Way
Suite A-190
Centennial, CO 80112

National Equine Lending Company, LLC
c/o Terry Green
563 W 500 S
Suite 230
Bountiful, UT 84010

Robert Holt
7200 S. Alton Way
Suite A-190
Centennial, CO 80112

New NEL, LLC
c/o Terry Green
563 W 500 S
Suite 230
Bountiful, UT 84010

Gary L. Thornhill
2880 Lakeside Dr
Suite 112
Santa Clara, CA 95054

Thomas Williams
90 Baker Lane
Erie, CO 80516-9064

/s/ Junis L. Baldon

*Attorney for Plaintiffs West Hills Farms, LLC, Arbor Farms, LLC, Nelson Breeders, LLC, MacDonald Stables, LLC and Monica and Jaswinder Grover*

LOULibrary 0108868.0536983   1167204v2