UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| In re: ClassicStar Mare Lease Litigation | ) | |
| | ) | MDL No. 1877 |
| WEST HILLS FARM, LLC, | ) | |
| | ) | Master File: |
| Plaintiff, | ) | No. 5:07-CV-353-JMH |
| | ) | |
| v. | ) | No. 5:06-CV-243-JMH |
| | ) | |
| CLASSICSTAR, LLC, et al., | ) | |
| | ) | MEMORANDUM OPINION AND |
| Defendants. | ) | ORDER |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Brookstone Development, Ltd., Inc.; Brookstone Development Pty., Ltd.;[1] Great Lakes Geophysical, LLLP; and Riverside Equities, LLC (collectively, Movants) request quashal of three issued subpoenas. DE #2623 (Motion to Quash).[2] Plaintiffs West Hills Farms, LLC; MacDonald Stables, LLC; Arbor Farms, LLC; Jaswinder Grover; and Monica Grover (collectively, Plaintiffs) responded in opposition. DE #2624 (Response). Movants replied. DE #2625 (Reply). The matter is fully briefed and ripe for consideration.[3] The subpoenas demand compliance in Louisville, Kentucky, and Mount

---

[1] The precipitating motion lists these two distinct Brookstone entities, *see* DE #2623, at 1; the Reply enumerates but one. *See* DE #2625, at 1, 4-5 ("Brookstone Development Ltd., Inc."). The Court proceeds in this slightly opaque context, referring (as Movants do) to "Brookstone."

[2] All citations are to the record in 5:07-CV-353-JMH. In case 5:06-CV-243-JMH, the identical motion is DE #894, the response is DE #895, and the reply is DE #896. The involved subpoenas are included in DE ##2620, 2621, and 2622.

[3] Judge Hood originally referred "all discovery disputes" to the assigned United States Magistrate Judge. DE #25 (Order), at 1; *see also* DE ##334 (Order), at ¶ 7 (same); 689, at ¶ 3 (same). The District Judge subsequently referred "all post-judgment discovery

1

Pleasant, Michigan. *See* DE ##2620-1, 2621-1, 2622-1. A motion to quash is properly directed, at least initially, to the "court for the district where compliance is required[.]" Fed. R. Civ. P. 45(d)(3); *see also, e.g.*, *Green v. Cosby*, 314 F.R.D. 164, 167 n.2 (E.D. Pa. 2016) (holding motion to quash was "properly filed" in E.D. Pa. although a Massachusetts court issued the subpoena).[4] The Eastern District of Kentucky is not the

---

disputes" to the undersigned "for all necessary proceedings and orders for resolution." DE #2531 (Order), at 5.

[4]   There perhaps are nuances to this principle in MDL cases. *See, e.g.*, *United States ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*, 444 F.3d 462, 467-69 (6th Cir. 2006) (stating, under the pre-amendment Rule; after noting that subpoena disputes "are decided by the court that issued the subpoena" and that the "power to quash . . . resides with the issuing court"; and, critically, in a pretrial context: "A judge presiding over an MDL case therefore can compel production by an extra-district nonparty; enforce, modify, or quash a subpoena directed to an extra-district nonparty; and hold an extra-district nonparty deponent in contempt, notwithstanding the nonparty's physical situs in a foreign district where discovery is being conducted."); *In re Monitronics Int'l, Inc.*, MDL No. 1:13-md-2493, 2014 WL 12623046, at *2 (N.D. W. Va. June 19, 2014) (applying current version of Rule 45 in MDL case, holding that "[b]y rule, PHT's motions [to quash] are in the wrong court" because the district where compliance was required was in North Carolina, not West Virginia (but also analyzing merits)); *In re Am. Med. Sys., Inc.*, MDL No. 2325, 2016 WL 3077904, at *2 n.1 (S.D. W. Va. May 31, 2016) (resolving pretrial motion to quash only after "transfer of the motion to this court"); *In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.*, Nos. 14-mc-72, 2436, 2:13-md-2436, 2014 WL 3035791, at *1 (E.D. Pa. July 1, 2014) (ruling on motion to quash only after N.D. Ill. transferred motion back to issuing court); *In re Method of Processing Ethanol Byproducts and Related Subsystems ('858) Patent Litig.*, Nos. 1:10-ML-2181-LJM, 1:13-MC-58-LJM-DML, 2013 WL 3820593, at *1 (S.D. Ind. July 23, 2013) (addressing motion to quash in MDL case only after transfer back from D. Conn., the district of filing); *see also In re Clients and Former Clients of Baron & Budd, P.C.*, 478 F.3d 670, 671-72 (5th Cir. 2007) (denying petition for a writ of mandamus, pre-amendment, holding that an MDL court "has power to rule on a motion to quash subpoenas"); *but see In re C.R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2187, 2014 WL 1660386, at *2 n.1 (S.D. W. Va. Apr. 22, 2014) ("The subpoena at issue in this case is directed to Shakespeare Monofilament, Inc. in Wichita, Kansas and requires compliance at Shakespeare's office in Columbia, South Carolina. Accordingly, this court is not located in the district where compliance of the subpoena is required. Nonetheless, jurisdiction to resolve the motion to quash or modify exists in this court under 28 U.S.C. § 1407.").

The parties did not discuss this foundational jurisdictional issue in any way, and the Court has independently found no post-amendment, post-Judgment, MDL quashal

2

district where compliance is required concerning these three subpoenas.[5] Accordingly, the Court **DENIES** Movants' quashal effort for want of jurisdiction but nevertheless provides the following guidance on the substantive issues.

I.   RELEVANT BACKGROUND

The involved parties here present a post-judgment discovery dispute to the Court. *See* DE ##2228, 2229, 2230, 2231, 2232, 2351 (Judgments); *see also In re ClassicStar Mare Lease Litig.*, 823 F. Supp. 2d 599 (E.D. Ky. 2011), *aff'd*, 727 F.3d 473 (6th Cir. 2013). Broadly speaking, this multi-district litigation matter, which has required Court attention for more than a decade, resolved Plaintiffs' RICO-centered claims against ClassicStar and other defendants concerning various mare lease agreements, resulting in a weighty (approximately $65 million) damage total. The Court references the cited opinions for a more thorough discussion of the underlying facts. The involved parties are now engaged in asset discovery and collection; the judgment debtors face a multi-million-dollar liability.

---

case addressing this precise question. *Pogue*, critically, issued pre-Rule 45 amendment setting the default quashal court as one in the "district where compliance is required." The parties here are also post-Judgment, as may be relevant under 28 U.S.C. § 1407. *See also, e.g.*, *In re Neurontin Mktg., Sales Practices, & Prods. Liab. Litig.*, 245 F.R.D. 55, 57-58 (D. Mass. 2007). With no contrary argument from the parties, and in light of the cases cited above, the Court perceives operation of the default Rule 45 principle (which is essentially what *Pogue*, pre-amendment, effectuated as well, in the particular MDL context) as proper. The Court denies the motion to quash on the jurisdictional ground, but, especially in light of possible MDL-related subtleties, also provides merits guidance.
[5] Rule 45(f) provides for transfer of a motion to quash from the court where compliance is required to the issuing court, "if the person subject to the subpoena consents or if the court finds exceptional circumstances." Accordingly, to give guidance to the parties and the court of the district(s) where compliance is required (either as an aid to resolution or to a decision to transfer any future motion to quash back to this District), the Court will explore the substantive quashal issues raised by the parties, although the present denial is solely on the 45(d)(3) jurisdictional ground.

3

As relevant here, certain non-party Movants ask the Court to quash three subpoenas the listed Plaintiffs issued to various banks. The Plaintiffs seek from the named banks a broad swath of documents that "identify or describe financial accounts or transactions owned, controlled, or conducted by" a variety of "individuals, entities or names since January 1, 2009[.]" *See* DE ##2620-1, 2621-1, 2622-1. These Plaintiffs oppose the motion to quash. The quashal effort pertains to only a few of the 19 subpoena categories.

The Court notes, as a commentary to its processing of the motion, that the parties' briefing ignores large areas of potential consequence and interest to the Court (including the decisional jurisdictional issue). Nevertheless, in an attempt to efficiently give guidance on the merits and enable post-judgment discovery to proceed as appropriate in this long-pending (and long-closed) case, the Court addresses the issues the parties have presented.

## II.    LEGAL STANDARD

"In aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person . . . as provided in [the Federal Rules of Civil Procedure] or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2). Here, certain judgment creditors seek to obtain discovery via subpoena. *See id.* 45.

"On timely motion," the court, as possibly relevant here, "must quash or modify a subpoena that: . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). Further, "[a]s provided in Rule 45, a nonparty may be compelled to produce documents[.]" *Id.* 34(c). Courts "have held that the scope of discovery under a subpoena

4

is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011); *see also Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003) ("It is well settled . . . that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34." (footnotes omitted)). Under Rule 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).[6] The amended Rule "codified a proportionality requirement, . . . exhort[ing] judges to exercise their preexisting control over discovery more exactingly." *Robertson v. People Magazine*, No. 14 Civ 6759 (PAC), 2015 WL 9077111, at *2 (S.D.N.Y. Dec. 16, 2015). "Restoring proportionality is the touchstone of revised Rule 26(b)(1)'s scope of discovery provisions." *Siriano v. Goodman Mfg. Co., L.P.*, No. 2:14-cv-1131, 2015 WL 8259548, at *5 (S.D. Ohio Dec. 9, 2015); *Albritton v. CVS Caremark Corp.*, No. 13-CV-218-GNS-LLK, 2016 WL 3580790, at *3-*4 (W.D. Ky. June 28, 2016) (same); *Gallagher v. Anthony*, No. 16-CV-284, 2016 WL 2997599, at *1 (N.D. Ohio May 24, 2016) (same); *see also* Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. Overall, even post-amendments, the general "scope of discovery is within the sound discretion of the trial court." *Coleman v. Am. Red Cross*, 23 F.3d 1091,

---

[6] Applying the Rule as amended on December 1, 2015, is just and practicable in this case. *See, e.g.*, *Doe v. Trs. of Bos. Coll.*, No. 15-10790-DJC, 2015 WL 9048225, at *1 (D. Mass. Dec. 16, 2015) (applying amended rule "insofar as just and practicable to all proceedings pending on Dec. 1, 2015" (internal quotation marks omitted)).

5

1096 (6th Cir. 1994); *see also Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007).

More particularly, discovery under Rule 69(a) must be calculated to assist in judgment collection. *Motorola Credit Corp. v. Uzan*, 293 F.R.D. 595, 598 (S.D.N.Y. 2013). Despite this constraint, the "scope of post-judgment discovery is broad." *Libraire v. Kaplan*, 760 F. Supp. 2d 288, 293 (E.D.N.Y. 2011) (citation and internal quotation marks omitted). This District has succinctly explained the contours of discovery in this setting:

> [T]he scope of post-judgment discovery is broad, *United States v. Conces*, 507 F.3d 1028, 1040 (6th Cir. 2007), and includes the right to obtain discovery from non-parties. Fed. R. Civ. Proc. 69(a)(2). A judgment creditor 'is entitled to utilize the full panoply of federal discovery measures provided for under federal and state law to obtain information from parties and non-parties alike, including information about assets on which execution can issue or about assets that have been fraudulently transferred.' *Andrews v. Raphaelson*, No. 5:09-cv-77, 2009 WL 1211136, *3 (E.D. Ky. Apr. 30, 2009) (quoting *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 561 (S.D.N.Y. 1977).

*GATX Corp. v. Appalachian Fuels, LLC*, No. 09-41-DLB, 2011 WL 4015573, at *2 (E.D. Ky. Sept. 9, 2011). The undersigned, in this very case, has previously approved a fairly expansive scope of permissible post-judgment discovery, *see, e.g.*, DE #2591 (Order),[7] including tailored "access to legitimate asset discovery, even [from] a non-party." *See* DE #2590 (Order), at 6-7 (explaining: "Rule [69(a)] generally does not encompass discovery of the assets of a true non-party. *Magnaleasing*, 76 F.R.D. at 562 (citations omitted). Courts should not apply the limit 'mechanically,' however, and '[d]iscovery has been

---

[7] *See also, e.g.*, DE #2546 (Recommended Disposition), at 12 n.5 ("Plaintiffs have already established fraud, and Judge Hood has found delay and obstructive conduct, affirmed by the Sixth Circuit. The Court will closely watch . . . for gamesmanship and deceit in asset discovery overseen here."), *adopted at* DE #2616 (Order).

6

permitted against a non-party where the relationship between the judgment debtor and the non-party is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets between them.' *Id.* (citations omitted)." (citation shortened)).

A party asserting that subpoena compliance will subject it to undue burden "must show that disclosure will cause it a clearly defined and serious injury." *State Farm Mutual Auto. Ins. Co. v. Warren Chiropractic & Rehab. Clinic, P.C.*, 315 F.R.D. 220, 224 (E.D. Mich. 2016) (internal quotation marks removed); *see also Buchanan v. Am. Motors Corp.*, 697 F.2d 151, 152 (6th Cir. 1983) (affirming quashal on the ground that the subpoena was "unreasonably burdensome"). Finally, "[t]he party seeking to quash a subpoena bears the ultimate burden of proof. If the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish the lack of relevance[,] but when relevancy is not apparent on the face of the request, the party seeking the discovery has the burden to show the relevancy of the request." *Hendricks*, 275 F.R.D., at 253 (internal citations and quotation marks omitted).

## III.   ANALYSIS

Movants[8] generally argue that the subpoenas demand production of irrelevant information—that they evince "a fishing expedition" seeking "a blanket production of any and all financial records for nineteen different entities spanning a period of seven years without any limitation." DE #2623-1, at 3. Movants summarize that the subpoenas are "unduly broad," lack facial relevance, and "seek confidential information of third-parties." *Id.* at 4.

---

[8] The Court notes, at the outset, that no party briefed or contested Movants' standing to challenge the subpoenas, which Plaintiffs issued to other entities (*i.e.*, the involved banks). Because the parties did not explore the topic, and given the privacy interests (as to financial records) alleged, the Court too moves past it to the merits.

7

Plaintiffs counter, in largely general terms, that Movants set forth only "conclusory assertions in protesting [the] subpoenas." DE #2624, at 3. Plaintiffs claim that "post-judgment discovery in this action has identified each of the three [movants] as an affiliate of the defendant-debtors; an entity used to convey assets away from the defendant-debtors; or an entity which took assets of the defendant-debtors for no significant consideration." *Id.*

In this context, and against the particular backdrop and history[9] of this case, the Court considers the challenged subpoena content regarding each movant:

*Brookstone*—The evidence submitted, DE ##2624-2 through -5,[10] demonstrates that the information sought as to the Brookstone entities is properly discoverable. For example, Jen Moeller, a GeoStar[11] employee, emailed Shane Peters, an accountant, stating that, *inter alia*, Brookstone is an "affiliated compan[y] of Geostar Corporation." DE #2624-2, at 2. GeoStar also emailed Thom Robinson[12] "current Brookstone activity reports" and "balance information." *See* DE #2624-3. Some of the Brookstone account activity reflects transfers and wire transactions to "TE Robinson," "GLG," other Robinson individuals, GeoStar entities, and other Brookstone entities. *See id.* The records show control or influence by Robinson over Brookstone. Other spreadsheets suggest financial connections, including wires, between GeoStar, Robinson, and Brookstone—

---

[9] A history of fraud that colors the Court's view of transactional and relational scrutiny and counsels a broader, rather than narrower, post-judgment discovery scope.

[10] The Court echoes Movants' concerns that the documents are facially unauthenticated. However, Movants do not advocate that the Court ignore the materials on that basis, and no party (in this high-stakes and hard-fought civil action) analyzes potential bases for authentication or the proper analysis of the documents in the current case posture. The Court declines to explore this topic further, given the parties' undeveloped briefing on the matter. Movants do not contest the accuracy of or contradict the documents.

[11] Multiple GeoStar-related entities are case defendants.

[12] Thom Robinson is a case defendant.

*e.g.*, "Assign payable to Brookstone – No detail as part of GEO consolidation of THOM accounts." DE #2624-4; *see generally* DE #2624-5. "The interconnectedness of" the involved players (as to all Movants), to the Court, "is, on this record, enough to allow some discovery[.]" *See* DE #2590 (Order), at 7.

The Court perceives, considering all the briefing and exhibits, and the applicable legal standard, that the information sought as to Brookstone—"all documents which identify or describe financial accounts or transactions owned, controlled, or conducted by" Brookstone entities "since January 1, 2009"—is within the proper scope of post-judgment discovery in this case. Identifying account signatories and actors, auditing transactions, and tracing funds in any way connected to the Judgment (*i.e.*, the debtors) is a legitimate part of collection in this expansive fraud case. The Court finds the subpoena's date cutoff (as to all Movants) to be a proper temporal scope, given the history of the case and the particulars of the financial evidence presented.[13]

Movants protest that simply because "an accountant in Australia sent an e-mail to an accountant at GeoStar referring to Brookstone as an affiliated company does not mean that it is." DE #2625, at 4. Perhaps so, but that proof certainly thrusts, as the Court has found, the desired Brookstone information past the low relevancy threshold for discovery purposes. Indeed, Movants fully admit the existence of a financial relationship between Brookstone and GeoStar. *See id.*; *see also* DE #2625-1 (Robinson Declaration). The

---

[13] Movants make no explicit claim that the requested information is "privileged or other[wise] protected" within the ambit of Rule 45(d)(3)(A)(iii). At most, Movants assert the material is "confidential." DE #2623-1, at 1, 4. Plaintiffs' counsel here has agreed "to treat the requested materials as confidential." DE #2624, at 9 n.10. The Court expects that counsel will be able to collegially draft (to the extent necessary) an appropriate protective / confidentiality agreement, but they may return to the Court on that distinct topic, if needed.

9

judgment creditors here are entitled to fairly explore this information, as part of post-judgment discovery, within the confines of the law and the Rules, to attempt to collect on their Judgment.[14] *GATX Corp.*, 2011 WL 4015573, at *3 (countenancing using discovery "to find out about assets on which execution can issue or about assets that have been fraudulently transferred or are otherwise beyond the reach of execution").[15] The judgment creditors should be able to understand the history of transactions and asset flow; these documents will, at the least, aid them to do so.[16]

*Riverside Equities*—The briefing parties foundationally dispute Riverside Equities' connection to the case—particularly Thom Robinson's role in the entity. *Compare* DE #2624, at 4 ("Thom Robinson exercised control over Riverside Equities."), *with* DE #2625, at 5 (*e.g.*, "Robinson himself has no ownership interest in Riverside."). The actual evidence on this point is slim. Penny Robinson, on personal knowledge, declared that Robinson "has no ownership interest in Riverside and is not a beneficiary of the trusts that own Riverside." DE #2625-1, at ¶ 2.

However, even if this is true, Plaintiffs' papers, DE ##2624-6 through -11, make clear that Robinson (and / or other case actors) was / were involved, to some degree, in Riverside financial decision-making. There are references to "shares associated with

---

[14] Movants include an offhand assertion that Plaintiffs failed to provide proper subpoena notice. DE #2623-1, at 4. Movants do not develop this argument further, and do not seek quashal on this basis, so the Court likewise declines to explore the topic further. Movants, through some mechanism, obviously were notified of the subpoenas, as the motion to quash establishes. *See* DE #2624 (Response), at 8 (narrating notice efforts).

[15] Even if, as Movants suggest, *see* DE #2625, at 3, 5, 6, some applicable fraud-related statutes of limitations may be expired, the Court does not perceive this as a bar to the judgment creditors exploring asset tracing and other discovery in this context.

[16] The Court also notes that Movants generally have attempted no showing of production creating a "clearly defined and serious injury," the necessary showing under Rule 45(d)(3)(A)(iv). *See Warren Chiropractic*, 315 F.R.D. at 224.

10

Robinson/Riverside," "money that is going between Geostar and Riverside" (even though, as Movant points out, there may be a "difference between Geostar and Riverside"), the "issuance of the majority of shares to Riverside signed by Thom," large transactions "deposited by Riverside . . . swept each day into an investment account" and ultimately "transfer[red] to Geostar," "Thom's associated entities . . . supporting VCR through Geostar/Riverside during 2006 and early 2007," and funds "remitted to Geostar" (including "funds Riverside remitted to VCR"). *See* DE #2624-6. Spreadsheets suggest the same level of connectedness and indeed specifically list line items referencing "Thom" or associated companies. DE ##2624-7; 2624-8. Robinson's emails likewise strongly suggest obvious and intimate involvement by him. DE ##2624-10; 2624-11.

The Court perceives, as above, that the information sought as to Riverside—"all documents which identify or describe financial accounts or transactions owned, controlled, or conducted by" Riverside "since January 1, 2009"—is within the proper scope of post-judgment discovery in this case.

As above, the judgment creditors are entitled to fairly explore this information, targeted at entities reasonably believed to be involved in temporally and historically relevant financial transactions / transfers, in an effort to properly collect the judgment amount. *See, e.g.*, *Falicia v. Advanced Tenant Servs., Inc.*, 235 F.R.D. 5, 7-8 (D.D.C. 2006) ("While judgment creditors cannot typically compel disclosure of assets of non-parties, discovery is permissible when the parties are closely related and reasonable doubts have been raised concerning the good faith of the transfer of assets between the two." (internal citations and quotation marks removed)).

*Great Lakes Geophysical*—Adding another verse to the common refrain, the briefing parties next debate the precise relationship between Great Lakes Geophysical, LLLP, (Great Lakes Partnership) and the judgment debtors in this case. Plaintiffs seek to characterize Great Lakes Partnership as a dubitable shell or holding company for Great Lakes Geophysical, Inc., assets, as evidenced by the allegedly suspicious circumstances of its formation, while Movant frames Great Lakes Partnership's creation as a fully transparent action of which Plaintiffs and counsel were fully aware. *Compare* DE #2624, at 5-6, *with* DE #2625, at 2-4.

As with the prior subpoena targets, the Court need not resolve the parties' contentions regarding the precise relationship between Great Lakes Partnership and other case actors. Instead, the Court merely addresses whether the information sought as to Great Lakes Partnership is properly discoverable in the specific legal and case context.

The Court has considered all evidence submitted. Plaintiffs' documents, DE ##2624-12 through -15, indicate an intimate financial relationship between Great Lakes Partnership and Great Lakes Geophysical, Inc. One email, in fact, has a subject line: "sale of assets by GLG, Inc. to GLG LLLP." DE #2624-15, at 1. The attachment to that email is an "asset purchase agreement GLG Inc to GLG LLLP." *Id.* The sale occurred deep into case pendency; indeed, the tendered Tony Ferguson[17] email is from three days before Judge Hood issued the 99-page summary judgment Memorandum Opinion. *Compare id.* (9/27/11 email), *with* DE #2314 (issued 9/30/11). This, in the Court's view, in the context of this case, reasonably colors the sale at issue. Ferguson's orchestrating role, and the timing, justify an evaluation of the entity's transactions whether disclosed at the time or

---

[17] Ferguson is a case defendant.

not. The Court thus perceives, as with the other Movants, that the information sought as to Great Lakes Partnership is within the proper scope of post-judgment discovery in this case.

As above, given the intimate financial relationship between Great Lakes Partnership and case actors, the judgment creditors, attempting to properly collect on the Judgment, are entitled to fairly explore the requested information. *See, e.g.*, *Caisson Corp. v. Cnty. W. Bldg. Corp.*, 62 F.R.D. 331, 334 (E.D. Pa. 1974) ("All agree that the judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor.").

Finally, the Court generally comments on proportionality. As to all claims Movants present, the Court perceives the information sought to fit within Rule 26(b)'s proportionality requirements. This is a case of uncommon complexity (2600+ docket entries, and a decade of pendency) and economic scope (tens of millions of dollars). Further, the particular context (judgment creditors attempting to properly collect what they are due in a fraud-centered case) counsels in favor of production on the scale ordered. There is undoubtedly a strong public (and private) interest in the Court's judgment being fully and properly executed, and the underlying issues in this case are weighty and significant (*i.e.*, using Rule 26's phrasing, the issues at stake in this action are "important"). The particular context—attempting to "follow the money" in collecting a judgment through evaluating the interconnectivity of numerous related entities— indicates to the Court that the creditors here likely have relatively restrained access to the information sought, suggesting subpoenaed production is appropriate. The at-issue information appears central to resolving the pertinent judgment-collection questions.

Finally, while the burden and expense of producing the information (not really an issue for the non-custodians) required may well be meaningful, the Court finds it would not outweigh the likely benefit of the information. In sum, the Court has fully considered the Rule 26(b) / Rule 45 proportionality principles, and, for the reasons discussed, finds the subpoena scope to be proportional to the needs of the case.

## IV. CONCLUSION

As discussed, the Court **DENIES** DE #2623 in 5:07-CV-353-JMH and DE #894 in 5:06-CV-243-JMH for want of jurisdiction, but provides the foregoing merits analysis for the reasons stated.[18]

\* \* \* \* \*

The Court issues this Opinion and Order resolving non-dispositive, post-judgment matters under the District Judge's referral, which the Court considers made under 28 U.S.C. § 636(b)(3). The statute does not define the appeal standard or mechanics. Some courts invoke the *de novo* standard of Rule 72(b). *United States v. Miller*, 609 F.2d 336, 340 (8th Cir. 1979); *Matter of Application of United States of America for an Order of Nondisclosure Pursuant to 18 U.S.C. 2705(B) for Grand Jury Subpoena # GJ2014031422765*, No. 14-296, 2014 WL 2000343, at \*2 (D.D.C. Apr. 28, 2014) ("Existing precedent suggests that 'additional duties' delegated to magistrate judges under subsection (b)(3) remain under the supervision and control of the district court and accordingly, review by district courts of matters referred to magistrate judges under section (b)(3) must be *de novo*." (citation omitted)). Other courts compare the particular

---

[18] The Court takes no action and suggests no analysis regarding the subpoenas other than vis-à-vis the named Movants. *See also* DE ##2624 (Response), at 6-7; 2625 (Reply), at 6 n.9. The subpoenaed banks also have raised no issue regarding compliance.

14

duty to the dispositive / nondispositive dichotomy and apply the closest analog. *N.L.R.B. v. Frazier*, 966 F.2d 812, 816 (3d Cir. 1992) (directing application of standard for duty "more akin" to typical (b)(1)(A) or (b)(1)(B) duties).[19] The matter is appealable to Judge Hood. A party objecting must file same within fourteen (14) days of Order entry. Failure to object waives a party's right to review.

This the 3d day of January, 2017.

Signed By:
Robert E. Wier  REW
United States Magistrate Judge

---

[19] In the specific context, as presented here, of a post-judgment discovery dispute, the District of Kansas applied the clearly erroneous standard. *See Fuddruckers, Inc. v. KCOB I, LLC*, 31 F. Supp. 2d 1274, 1276 & 1276 n.1 (D. Kan. 1998) ("The district court's power to refer motions for postjudgment discovery to a magistrate judge is conferred by 28 U.S.C. § 636(b)(3)'s 'additional duties' provision. . . . Section 636(b)(3), unlike its companion subsections, does not provide a statutorily-defined standard of review. The court is aware of, and has considered, Tenth Circuit authority suggesting that a *de novo* standard of review is applied to rulings on matters referred to magistrate judges under 28 U.S.C. § 636(b)(3). . . . Nevertheless, the court finds that orders relating to postjudgment execution and discovery matters are more analogous to non-dispositive pretrial discovery dispositions, and therefore applies the 'clearly erroneous' standard of review to Magistrate Judge Rushfelt's order in this case." (internal citations and paragraph break removed)).